

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**KLEANTHIS N. ANDREADAKIS,**    :
             :
 Plaintiff,          :
             :  Case No. 3:22-cv-52-DJN
v.             :
             :  District Judge David Novak
**CENTERS FOR DISEASE**    :
**CONTROL & PREVENTION** *et al.*, :
             :
Defendants.        :

**PLAINTIFF'S COMBINED OPPOSITION TO AIRLINE & FEDERAL DEFENDANTS'**
**MOTIONS TO TRANSFER CASE TO THE MIDDLE DISTRICT OF FLORIDA**

COMES NOW plaintiff, *pro se*, and opposes the duplicative motions filed by the Airline De-

fendants (Doc. 12 & supplemented at Doc. 29) and the Federal Defendants (Doc. 45) in a blatant

attempt to link this lawsuit, filed on behalf of myself only, to other individuals who are not parties

to this case – parties that have no association to the claims I make other than us belonging to the

same coalition of disabled Americans fighting for our civil rights. The defendants are judge-shop-

ping in hopes of sending my claims to the dark abyss of the Middle District of Florida, where they

have a friendly judge who has buried two lawsuits challenging the Federal Transportation Mask

Mandate ("FTMM") and the discriminatory mask policies of numerous airlines. The Court should

not reward the defendants' desire to sink my claims and relink them to an extremely hostile litiga-

tion environment in Florida, which I purposefully decided to withdraw from because the proposed

nationwide class-action lawsuit was not progressing after numerous months. This case is about me

and the fact that some of the Airline Defendants have already been found in violation of the Air

Carrier Access Act by US DOT with respect to my claims but continue to violate the law with

1

respect to the disabled as well as legal challenges to the FTTM, period. I would hope the Court would stay laser-focused on this point and not let the defendants distract it with all sorts of non-sense.

Transfer of this case is not warranted because the statute governing inter-district transfers in no way supports the defendants' desire to consolidate my case with that of those that I am not a party to because of numerous rulings in their favor – and more importantly here, the Florida court's unwillingness to even rule on time-sensitive matters that led to the termination of one plaintiff's employment and the inability of another plaintiff to visit his brother in Germany for more than eight months, even though his family member is in the midst of separating from his wife and urgently heeds his help and emotional support.

Because the two motions to transfer present substantially similar issues, I address them here in one combined opposition.[1]

The Court directed me in its Feb. 9 Order "to respond to Defendants' arguments regarding whether ghostwriting or unauthorized practice of law has occurred in this case in his Response to the Motion to Transfer…" Doc. 27 at 3. Defendants' allegations are baseless. Ghostwriting is de-fined as "Any ***attorney*** who prepares any document that is to be filed in this Court by a person who is known by the ***attorney***, or who is reasonably expected by the ***attorney***, to be proceeding *pro se*…" Local Civil Rule 85(M)(1) (emphasis added). I am required to certify on each filing that "under penalty of perjury that a document(s) filed with the Court has not been prepared by, or with the aid of, an ***attorney*** or shall identify any ***attorney*** who has prepared, or assisted in preparing, the document." Local Civil Rule 85(M)(2) (emphasis added). I have complied with this rule. No

---

[1] Local Civil Rule 7(F)(3) allows me 30 pages per opposition brief. Because the issues raised in these two motions are intertwined, I submit one consolidated opposition in the interest of judicial economy. I assume that this permits me up to 60 pages for this brief since it combines what would otherwise be two oppositions.

attorney has helped me prepare any filings in this case. Google, online forums, applicable case law and non-attorney members of AAMM have assisted me, just as I assist them. As discussed in the Argument section below, this association is protected by the First Amendment and does not constitute unauthorized practice of law.

Finally, the Airline Defendants my not raise a dispositive Rule 12 motion to dismiss in a motion to transfer, so the Court must deny that portion of their motion regardless of how it rules on transfer. Doc. 12-1 at 15-17.

## I. STATEMENT OF FACTS

The defendants' motions are full of so many falsehoods it's difficult to know where to begin. I will try to organize them in order starting with the Airline Defendants' motion (Doc. 12, supplemented by Doc. 29) and then the Federal Defendants' motion (Doc. 45).

1. **AIRLINE DEFENDANTS' MOTION:** My lawsuit is not "nearly identical" to litigation over transportation mask mandates in other states. None of the plaintiffs are the same, we have little in common with each other, and many of the defendants are different. So are nearly all the facts.

2. Lucas Wall, or any other person, is not a party to this litigation. I am the only plaintiff. The Court should instruct counsel for all defendants to stop obstructing these proceedings to obtain justice for myself based on the cases of other members of Americans Against Mask Mandates ("AAMM"). We are a coalition of disabled Americans fighting for our civil rights. None of us are wealthy and therefore can't afford to hire lawyers at crazy prices such as $800 per hour. I am prosecuting these claims *pro se*. The defendants appear angry that AAMM members are better organized, more knowledgeable about the law, and can write better than the typical *pro se* litigant. Their annoyance that we litigate our own cases

3

because we cannot hire lawyers seems to greatly annoy them. But it is my constitutional and statutory right to represent myself, and that is what's happening here. No other person is representing me.

3.  The airlines attach to their motion to transfer as exhibits dockets of Mr. Wall's cases in the Middle District of Florida. But these have nothing to do with this litigation and are thus irrelevant. I am not and have not ever been a recognized plaintiff in either of those cases. Although I attempted to join the putative nationwide class action against seven airlines (*Wall v. Southwest Airlines*), the Court never recognized me as a plaintiff, listing me on the docket instead as a "movant." Notably some of the same Airline Defendants in this case, represented by the same lawyer (Roy Goldberg), made a point in nearly every filing in *Wall v. Southwest Airlines* declare I was not a recognized plaintiff. Yet here Mr. Goldberg attempts to spin this Court into reaching a totally different conclusion. His two-faced behavior can't be rewarded.

4.  Mr. Wall has not caused the instant case to be filed in an effort to find a friendlier forum to re-litigate his challenges to the mask mandate. This case represents transparent forum-shopping by the defendants." Mr. Wall is a plaintiff in two cases in the Middle District of Florida, which is true. He is also a petitioner in a case challenging the Transportation Security Administration ("TSA")'s enforcement of the FTMM. *Wall v. TSA*, No. 21-1220 (D.C. Cir.) I am the only plaintiff in this litigation. Mr. Wall did not cause my case to be filed. I did. Mr. Wall is not involved in this case except that he and I, along with dozens of others in AAMM, and the rest of the online world, are sharing our knowledge of the law. I, myself, am suing the airlines for illegal discrimination and the government for imposing an illegal and unconstitutional mandate never authorized by Congress. Notably, we have a

constitutional right to associate and help each other battle against illegal discrimination, as I will discuss below in the Argument section.

5. This Court has personal jurisdiction and venue with regard to Defendants American Airlines and United Airlines because they, the "mainline" carriers, deny or approve mask exemptions, not any of their regional affiliates (who, it must be noted, operate as brands of the main airlines, i.e. "United Express" and "American Eagle." And, as noted above, the rules do not permit a dispositive Rule 12 motion to be contained within another motion. The "mainline" brands of American and United set mask policies. Exemption requests are sent to "mainline" employees. The "conditional" exemptions I've received were written on "mainline" United letterhead and signed by a United employee, who has filed declarations in this case. The third-party medical examiner contractors (such as Defendant STAT-MD) are hired by the "mainline" carrier. Also, I was able to serve both corporations in the state of Virginia. It should disgust the court that counsel for the airlines attempt to point fingers at their regional partners or "the little guys" as a cause for these claims to arise, when they know for certain it is their clients' illegal policies that have motivated this cause.

6. Mr. Wall has not "been using members of his online coalition against the Federal Transportation Mask Mandate … to file new *pro se* cases that are nearly identical and reflect the clear involvement of *pro se*, non-lawyer Mr. Wall." Doc. 12 at 2. In reality, I filed this case. Other AAMM members have done the same. We drive our own litigation, not Mr. Wall (although he and other AAMM members assist each other, as is our First Amendment right to associate and petition the government for a redress of grievances).

7. The airlines falsely claim that "this case is one of several attempts by Lucas Wall to expand his Middle District of Florida litigation beyond that forum by filing suits on behalf of anti-

mask coalition members – despite the fact that Mr. Wall is not a lawyer…" *Id* at 2. The defendants need to stop being infatuated with Mr. Wall. He is not filing suits on behalf of other AAMM members. I filed this suit in person at the Richmond courthouse, where I was subjected to more illegal mask requirements. I paid the filing fee. I have made many trips to the Richmond courthouse to file papers since the Court improperly denied my motion to be able to benefit from e-filing.

8. It's funny the Airline Defendants (and Federal Defendants) chastise me for filing similar pleadings and motions as those in other FTMM cases when they are doing the exact same thing, cutting-and-pasting their motions to transfer and oppositions to motions for preliminary injunctions using the exact same lawyers (Roy Goldberg for the Airline Defendants and Stephen Pezzi and Andrew Freidah for Defendants CDC and HHS) in all the cases they reference.

9. The Airline Defendants insult my intelligence by alleging "Although Mr. Andreadakis claims to be proceeding *pro se*, his 156-page federal court Complaint is full of federal legal claims and arguments including 44 separate counts." Doc. 12-1 at 3. I'm not sure what point the airlines are trying to make here except to assert that because I'm not an attorney, that I'm not intellectually capable of reading and about the law and learning from other individuals who have suffered harm because of our disabilities.[2] Defendants make a point

---

[2] All defendants will in their reply briefs likely raise a stink that my opposition to their transfer motions is similar to the one filed by Michael Seklecki in *Seklecki v. CDC* (D. Mass.) and Michael Faris in *Faris v. CDC* (W.D. Ky.). The Court should note that both the Airline Defendants and Federal Defendants filed nearly identical, almost verbatim motions to transfer around the same time in all three cases. Just like the five airlines in this case have banded together to hire the same national lawyer (Roy Goldberg) and the two federal agencies (CDC and HHS) and hired the same Department of Justice lawyers (Stephen Pezzi and Andrew Freidah) to work together, Mr. Seklecki, Mr. Faris, and I are also collaborating in defending these duplicative transfer motions since the meritless arguments raised by the airlines and the government are pretty much the same in each case. We have a First Amendment right to associate for this purpose, just as the airlines do in mounting collective defenses to these three cases.

to note I work part-time as an investigator for law firm, meaning I have long been exposed to attorneys, the law, and our legal system. I have a First Amendment right to associate with like-minded individuals and learn from them about using litigation to assert the rights I have under federal law. It's not rocket science to read similar cases and model my complaint and briefs after those who have come before me. And it shouldn't surprise the Court that defendants who commit the same crimes are charged with the same causes of action. The airlines' position would suggest that if six people commit an armed robbery together, that it would be inconceivable they would be indicted for the same infringements of the law. Here we have every major U.S. airline engaged in a conspiracy to interfere with the civil rights of the disabled by breaking more than 20 provisions of the Constitution, statutes, regulations, treaties, tort law, common law, breach of contracts, etc. That several complaints would be filed in different states by different people charging the Airline Defendants with the same crimes is not at all surprising or unusual. The same goes for the Federal Defendants.

10. The fact that Mr. Wall, as chairman of AAMM and an advocate for the disabled (he himself is disabled), has *advocated* on behalf of other coalition members – a big distinction from claiming to *represent* any member in federal court – has no relevance here. Mr. Wall told me when I first contacted him and joined AAMM last year that he's not a lawyer, may not represent anyone, and if I decided to sue, I would have to do so *pro se*. Mr. Wall has never claimed to have graduated from law school nor has he told anyone in AAMM that he is a licensed attorney, so these comments are baseless. Mr. Wall is not a party to this case.

11. The airlines state that "Mr. Wall has so far not filed 'an amended pleading to cure the deficiencies' in his Amended Complaint" in *Wall v. Southwest Airlines*. *Id.* at 6. But Mr.

7

Wall and the dozen (now 11) other plaintiffs in that proposed class-action suit filed objections to the magistrate's Report & Recommendations many months ago, which the district judge has never ruled on, stalling the case. It's no wonder the airlines are desperate to move my case to Orlando. They know they will evade accountability as this case sits on the shelf gathering dust while these Airline Defendants continue to discriminate against thousands of disabled Americans who can't wear masks every single day.

12. I filed a Notice of Voluntary Dismissal from *Wall v. Southwest Airlines* because the court never recognized me as a plaintiff, only as a "movant." Tired of waiting for numerous months for the class-action to move forward and for that court to recognize me as a named plaintiff, I withdrew from the case. The airlines lie when claiming "It is expected that this Notice was filed in an effort (which should not be successful) to try to avoid transfer of this case to the Middle District of Florida." *Id*. at 6. Although the airlines think I'm dumb because I couldn't possibly write a federal Complaint, I actually know that you can't sue the same defendants over similar claims in two separate lawsuits. That's why I promptly formalized my withdrawal from *Wall v. Southwest Airlines* once I filed this case.

13. Mr. Wall is required by the Local Rules of the Middle District of Florida to file a Notice of Related Action when a similar case comes to his attention. Since the Local Rules do not define what is a "related action" and that court has not given *pro se* litigants any guidance, Mr. Wall complied with the rule by filing a notice when I submitted my case. A look at the dockets shows he has filed numerous such notices in the Orlando lawsuits, including many cases that are not brought by members of AAMM. The airlines' counsel seem to fault Mr. Wall for obeying the rules in Orlando, which is highly improper for officers of the court. Mr. Wall's filing of a Notice of Related Action in Orlando has zero impact on my case in

Richmond other than to comply with his duty under the Local Rules to notify the court there when he learns of any case with similar (but not the same) defendants.

14. The airlines make many other false claims including that preliminary decisions issued by Judge Byron in the Middle District of Florida cases adverse to Mr. Wall appear to have motivated the instant case to be filed in an effort to find a more receptive forum to re-litigate Wall's and AAMM members' challenge to transportation mask mandates. In truth, my motivation in filing this lawsuit is to obtain justice for myself. The Court must ignore the defendants' insinuations that I am somehow a puppet of the chairman of an online anti-discrimination group. The truth is, I read in the news about Mr. Wall's litigation against mask mandates last year and contacted him. I later learned about AAMM (founded Aug. 1, 2021) and joined the group, which currently has about 600 members. I am litigating this case solely for myself. Mr. Wall can't "re-litigate" in this Court since he's not a plaintiff.

15. The airlines wrongly allege my case represents "transparent forum-shopping" that fully supports application of the first-to-file rule because this case is one of "several attempts" by Mr. Wall to "expand" his Middle District of Florida litigation. I'm not sure how I can engage in "forum shopping" when I live in Virginia (since 2015) and must fly in and out of the Richmond airport when I travel. The majority of incidents giving rise to my claims occurred in the Eastern District of Virginia, which is also the district I live in, and on flights to and from this district. Again, the Court should instruct the defendants to stop lobbing false allegations that Mr. Wall is behind this lawsuit. Mr. Wall is not "filing suits on behalf of anti-mask coalition members." He is not an attorney and can't file a lawsuit on behalf of anyone but himself. The Court must ignore these baseless allegations of the airlines, who clearly are afraid to defend their illegal actions before this Court. I made the decision

to bring this lawsuit on behalf of myself, not Mr. Wall. I filed this case. I am litigating this case. The fact that others who have faced similar discrimination are helping me does not mean they are filing suits on behalf of anyone else. The defendants might think I'm intellectually challenged because I can't afford to hire an attorney, but I know what it means to be *pro se*. I am in sole control of this lawsuit, not any other person. It's frankly insulting for the airlines to imply otherwise.

16. Again we have the Airline Defendants, afraid of being held legally accountable for their crimes against the disabled, insulting my intelligence by arguing that the litigation strategy is formulated and directed by a *pro-se* non-lawyer litigant Mr. Wall. The 19 AAMM members who are currently involved in 11 lawsuits against CDC, HHS, TSA, and nine airlines – plus the dozen or so other members who are working on their own discrimination complaints yet to be filed – work collectively. We are not "directed" by anybody. We are suing to defend our rights, not those of Mr. Wall. Yes, we share a common goal. But if I succeed in winning monetary damages from the airlines in this case, that money goes to my family, not any other person. Any "litigation strategy" is developed in our regular group videoconferences by all participants, where we discuss the discrimination we are enduring by the government and airlines because we have medical conditions that preclude us from safely wearing masks. Although Mr. Wall is the founder and chairman of AAMM, he does not control me or any other coalition member. The airlines' false allegations further reflect their aggravation that a well-organized group of non-lawyers is bringing to light their law-breaking.

17. My motivation is to obtain justice for myself, period. I'm not relitigating any of Mr. Wall's claims because he is not a party in this case and this lawsuit is focused solely on the discrimination I have endured because of the defendants' misconduct. They want to sweep my complaints under the rug by lumping all similar cases together as one when in fact each plaintiff brings forward their own unique claims of discrimination, harassment, and intimidation.

18. The Airline Defendants continue beating a dead horse by falsely claiming that this case represents transparent forum-shopping that supports application of the "first to file" rule. Lacking any meritorious arguments, the defendants keep repeating falsehood after falsehood. This is the forum where the bulk of events giving rise to my claims occurred. This is the district I live in and fly in and out of. Mr. Wall is not a part of this case so it's bizarre to state he is "expanding" his litigation. Mr. Wall is not filing suits on behalf of any other AAMM members. I don't know how many times I have to say this: I filed this lawsuit myself. The fact that I have support from others who have suffered similar discrimination is not illegal and is actually my constitutionally guaranteed right.

19. The airlines attach an appendix noting the causes of action in the two *Wall* cases are somewhat similar to those in my Complaint. Again, of course they are. When the same criminals break the same laws, they are charged with the same offenses. This should not come as any surprise to the Court. Notably the *Wall* cases include different defendants and charges, and I raise different causes of action including violation of California anti-discrimination laws that are not an issue in any *Wall* case. I also charge STAT-MD, a medical consultation company, with conspiracy and medical malpractice. STAT-MD is not a defendant in any of the *Wall* cases in Florida. Defendants American and United are not either. The *Wall*

cases include as defendants several airlines that I am not suing. In addition, US DOT has found two of the named Airlines Defendants (Southwest and JetBlue) in violation of the Air Carrier Access Act with respect to me, and yet the Airlines Defendants violations continue against me and the disabled.

20. Although AAMM members share our legal papers with each other – as do lawyers at the same and affiliated firms and when collaborating on similar cases in different states, it should be noted – there's nothing improper or illegal about that. I can't be expected to reinvent the wheel when others have come before me suing some of these defendants for some of the similar crimes committed against me. Just like the Airline Defendants are filing nearly verbatim the same motions in numerous lawsuits against their discriminatory mask policies.

21. The Court needs to instruct the defendants to leave nonparties out of this litigation. Of course my Complaint is based on those filed by Mr. Wall in his cases because all AAMM members are fighting similar discrimination and lawbreaking by the government and airlines. And yet again, coalition members assisting each other in drafting pleadings is not illegal but rather protected by the First Amendment. The defendants can't deny me access to the courts because I'm not a lawyer and can't afford to hire one. Notably the airlines make no accusations, and of course have no actual evidence, that any lawyer has been involved in writing my papers. Rather counsel for the airlines seem annoyed that a group of "laymen" can write strong arguments without the assistance of $800-per-hour lawyers.

22. "[T]his lawsuit also presents real concerns about forum-shopping." It sure does – by the defendants. Although various AAMM members have filed similar claims, they are by far not "the same." The airlines are the ones engaged in forum shopping, desperately trying to

get this case moved to Orlando, where Mr. Wall's cases sit undecided for months on end and the judges have expressed great hostility toward him and the 12 (now 11) other plaintiffs. The fact that many AAMM members and I are more knowledgeable about the law than many who went to law school appears to greatly frustrate counsel for the airlines and the government. But we have a right to associate and work together. Neither the airlines nor the government have a right to violate the law, no matter how many expensive lawyers they can afford.

23. I am not a part of *Faris v. CDC* or *Seklecki v. CDC*. *Id*. at 7. Likewise, Mr. Faris and Mr. Seklecki are not parties to this case. The Court must ignore all discussion about these matters that involve different plaintiffs and many different defendants. And the Kentucky and Massachusetts cases are not "Mr. Wall-driven." *Id*. at 10. They are driven by Mr. Faris and Mr. Seklecki, the latter of whom is suing on behalf of himself and his 4-year-old autistic son who can't wear a mask but has been deprived of flying by several airlines.

24. The airlines continue their fabrications with unfounded allegations that "it is clear from comparing the allegations that Lucas Wall drafted the Andreadakis Complaint filed in this case and is a real party in interest – the primary party in interest – in all the cases." *Id*. at 11. I drafted my Complaint based on those filed in prior cases. Mr. Wall isn't a party to this case. I'm the only party in interest. I'm the one the airlines are discriminating against that led to this lawsuit. To claim that some other person not a part of this litigation is "the primary party in interest" is just bizarre and shows the desperation the airlines have to get this case moved to their choice of venue, even though I have never taken a flight in or out of Florida during the COVID-19 pandemic and therefore my case could not be filed there.

25. The airlines offer more unfounded assertions that "it is apparent Mr. Wall drafted both the Complaint in this case and the Amended Complaint in the Middle District of Florida cases." *Id.* at 11. Although they are similar, I mainly worked off Mr. Faris' Complaint filed in the Western District of Kentucky in formulating my Complaint.

26. They continue their obsession with Mr. Wall by lodging more baseless allegations including that "Mr. Wall is not a lawyer. He has no authorization to draft and file legal complaints on behalf of Mr. Andreadakis. Yet if this case is not transferred to the Middle District of Florida, Mr. Wall will continue to litigate his challenges to the FTMM in this Court, among other forums, in a manner that represents the unauthorized practice of law." *Id.* at 13. Mr. Wall does not draft or file legal documents on behalf of myself. I represent myself. I file all documents myself. Mr. Wall is not litigating anything in this Court as he is not a party. I am the plaintiff. Counsel for the Airline Defendants should be admonished not to make meritless criminal allegations against someone who is not a party to this case.

27. **AIRLINE DEFENDANTS' SUPPLEMENT:** Much of the garbage thrown about in the Airline Defendants' motion (Doc. 12) is repeated in the supplement (Doc. 29), filed in response to the Court's Order that the defendants offer evidence of "ghostwriting" or "unauthorized practice of law." First, ghostwriting only applies to lawyers writing papers for supposed *pro se* litigants. Second, as stressed above, nobody is engaged in the unauthorized practice of law. AAMM members' litigation activities are expressly protected by the First Amendment.

28. "[L]arge sections of Mr. Andreadakis' Complaint in this case contain language which appears to have been taken verbatim from each of Lucas Wall's two complaints." Doc. 29 at 3. Well of course they are. I participated in writing the Amended Complaint in *Wall v.*

14

*Southwest Airlines* when AAMM decided to pursue a nationwide class-action lawsuit against seven airlines for their unlawful discrimination against those with medical conditions who can't safely wear masks. Naturally I used some of the group's work in my pleading in this case. And I cut-and-pasted much of the Amended Complaint in *Wall v. CDC* along with *Faris v. CDC* because there's no need for me to start from scratch what others before me have compiled. The key point is that I am behind this lawsuit, not anybody else.

29. The Airline Defendants pose a strange question: "In other words, how can Mr. Andreadakis claim that he is the author of pleadings filed in this case when such similar pleadings were filed by *pro se* plaintiffs in the other two cases?" *Id.* at 3. Just in the same way the various Airline Defendants have filed nearly verbatim motions in mask-discrimination cases – they have banded together to hire the same lawyers. Just like AAMM members have banded together to prosecute our discrimination claims.

30. Mr. Wall is not "seeking to represent the interests of prospective plaintiffs in that case, including the Plaintiff Mr. Andreadakis in this case." *Id* at 4. Every AAMM member prosecuting a case in federal court is doing so *pro se*, although many are working together in some of the cases against airlines and the Transportation Security Administration.

31. Selecting a lead plaintiff and class representative in *Wall v. Southwest Airlines* to coordinate joint filings is not at all "like the practice of law." *Id.* at 6.

32. The Airline Defendants' extensive discussion of "metadata evidence" from Middle District of Florida cases is wholly irrelevant and lacks foundation. Many plaintiffs in *Wall v. Southwest Airlines* don't have the software to create PDFs from Microsoft Word files. I, along with Mr. Wall, often assists those who need help, hence how the names sometimes shows up in the "Author" field of PDF documents. *Id.* at 7-9. Filings are made by all the plaintiffs

jointly, so when Mr. Wall writes a paper, all plaintiffs review, submit edits, and then approve for joint filing. Because the magistrate forced us to file the same joint paper separately, we had to file 13 identical copies of each document. Of course Mr. Wall appears in the "Author" field since he's the lead plaintiff and coordinates drafting and edits, which all plaintiffs must approve and file using the Middle District of Florida's web portal for those without ECF access. I raise this point to clarify, but I also reassert that I was never and the court never considered me a plaintiff in the proposed class-action.

33. The Airline Defendants raise a stink about Doc. 96 in Case No. 1008 that I filed, but they fail to inform the Court that this same document was filed by all 13 *Wall v. Southwest Airlines* litigants. The same applies to Doc. 120, objections filed by all litigants. *Id.* at 8-9.

34. The filings in this case are not "purported to be on behalf of Mr. Andreadakis…" *Id.* at 9. I have personally filed all documents with the clerk's office, nearly all in person at the Richmond courthouse.

35. The Airline Defendants offer no evidence that "it can be assumed that Mr. Wall also scrubbed metadata from any involvement had had in preparing pleadings in this case." *Id.* at 10. Mr. Wall has not "scrubbed" anything. I work with other AAMM members to craft my pleading, motions, notices, oppositions, etc. I finalize my papers, print them in paper, and hand carry them to the clerk's office at the Richmond courthouse for filing. The Court need only check with the clerk's office and the U.S. Marshals Service. I'm apparently becoming famous in the Richmond courthouse since I have to assert my medical exemption to the Eastern District of Virginia's mask mandate every time I appear in the building.

36. In any case, as argued below, there's nothing improper or illegal about a group of *pro se* litigants associating to help each other in learning the law and writing court papers. If the

Court were to believe the Airline Defendants' assertions, their counsel would also have engaged in illicit behavior by coordinating their files among the seven airlines Mr. Goldberg represents in various mask-discrimination cases, including at least two not filed by AAMM members (Alaska, American, Delta, JetBlue, Southwest, Spirit, and United). These airlines have all hired the same lawyer to defend against their discrimination against the disabled. It's no different that AAMM members have banded together to prosecute those claims.

37. **FEDERAL DEFENDANTS:** Moving along to CDC and HHS, their counsel make many of the same carbon-copied claims as the Airline Defendants, some of which appear to be verbatim, although two different firms (Stinson and U.S. Department of Justice) are defending separate clients. This shows clear collusion between the Airline and Federal Defendants – exactly the conduct they blast AAMM members for. I will try to focus here on the falsehoods the government alleges that differ from the airlines, while referring the court to the 36 points above, many of which also relate to the government's misleading and incorrect assertions.

38. This is not a "duplicative lawsuit," as the Federal Defendants state about a hundred times in their motion. Doc. 45 at 1 *et al*. My claims stand alone on behalf of myself. I challenge the FTMM as do several other cases, including those filed by litigants with no connection to AAMM (*see* Argument below).

39. The Federal Defendants incorrectly claim that "Mr. Andreadakis was added as a plaintiff in that case in a September 13, 2021, amended complaint." *Id*. at 1. Although I tried to join *Wall v. Southwest Airlines* as a named plaintiff in a proposed class-action lawsuit, neither

17

the Airline Defendants nor the Court ever recognized me as a plaintiff. I was listed on the

docket as a "movant."

40. "In multiple filings, members of Mr. Wall's and Mr. Andreadakis' group threatened that if

Judge Byron did not issue rulings shortly on various pending issues, they would file similar

lawsuits in another federal judicial district." I have not made any "threat" to a judge any-

where. I would hardly describe asking a judge to make a ruling by a date certain because

people are going to lose their job or be denied the ability to take care of a family member

in crisis in a foreign country, *inter alia*, a "threat" to a judge. The government, like the

airlines, is trying to inflame the Court. The Court should admonish these lawyers to focus

on my claims, not those filed by others in different courts that aren't parties to this action.

41. "Mr. Andreadakis and two other group members (Mr. Michael Faris and Mr. Michael

Seklecki) did exactly that." *Id.* at 2. Mr. Faris and Mr. Seklecki could not have done any-

thing related to the Middle District of Florida litigation because they were never plaintiffs

or "movants" in those cases. And again, a notice to the Court that I'll withdraw from the

putative nationwide class action and pursue just my own claims in no way, shape, or form

constitutes a "threat" to a federal judge.

42. Mr. Wall has not filed repeated notices "of increasing hostility" in the Orlando cases. *Id.*

at 4. He's had to continue requesting every week that the court rule on his motion for pre-

liminary injunction, filed more than two months ago, because he can't fly to take care of

his brother in Germany due to the FTMM and airlines' mask policies. The Court in Orlando

is being hostile to Mr. Wall and the other disabled *pro se* litigants, not the other way around.

43. My lawsuit does not involve any flagrant attempt at judge-shopping. I live in this district

and fly in and out of this district. It's the government (and the airlines) who are flagrantly

18

judge-shopping, hoping to get all cases challenging the FTMM and mask discrimination before the same judge in Orlando who has not given the dozen plaintiffs there any relief and has a habit of not ruling on motions submitted by the disabled *pro se* litigants, but rapidly ruling anytime the government or airlines ask for relief.

44. The Federal Defendants fail to note that Mr. Wall's litigation in Florida challenges additional government policies than what I attack here. Mr. Wall in *Wall v. CDC* is suing the Central Florida Regional Transportation Authority and the Greater Orlando Aviation Authority for violating a Florida executive order prohibiting any public agency from forcing anyone to cover their face. Whereas I am not suing any state agency here in Virginia.

45. Even though it doesn't involve CDC and HHS complain that I filed for preliminary injunction against the Airline Defendants." But Mr. Wall has never filed for a PI against any airline. Another plaintiff (Peter Menage) did, Judge Byron hasn't ruled on it in months, and as a result, Mr. Menage was fired from his job for being unable to fly company-chartered flights from Anchorage to the Prudhoe Bay oilfields. Alaska Airlines retaliated against him by prohibiting him from flying because he dared sue the carrier for discriminating against the disabled.

46. Like the Airline Defendants, the Federal Defendants stick their nose where it doesn't belong as part of their Hail Mary pass to get this whole case sent to Florida. The Federal Defendants point to how *Wall v. Southwest Airlines* contains instances in which the "metadata" of a court paper filed by a plaintiff had Mr. Wall listed as the "Author." *Id.* at 8, FN 7. They make this claim based on an "author" field in Adobe PDF, which occurs in many ways, as explained above and I need not repeat. This is just another effort to inflame the Court and distract it from the government's *ultra vires* mandate that every person using

any public transportation anywhere in the nation wear a face mask, a policy Congress has never enacted into law.

47. Continuing its effort to distract the Court from the real issues at hand, CDC and HHS write another footnote whining that Mr. Wall sent an e-mail for Mr. Seklecki on Jan. 27. *Id.* at 9, FN 9. But as Mr. Seklecki explained to Boston court Feb. 20: "As I noted, my iCloud e-mail inbox went over the storage limit. I had to contact Apple support many times to try to get the problem resolved. Apple then deleted all of my e-mails, which was a total disaster. Then nearly every e-mail I received went into the 'junk' folder. Thus, I decided to change to Gmail for my main e-mail account, at least until I can properly get Apple to fix my iCloud. All of this happened around the time I filed the Complaint. To abide by the Certificate of Service I signed, I asked Mr. Wall if he could e-mail the Complaint to defense counsel since he has the ability to make a PDF and has their e-mail addresses from other cases. To insinuate this amounted to Mr. Wall acting as a lawyer for me is pure nonsense. And there is nothing wrong with me engaging an advocate in helping me assert the rights my son and I enjoy under federal anti-discrimination laws." *Seklecki v. CDC* at Doc. 59.

48. The government tries to make a mountain out of a molehill concerning Mr. Wall's e-mail to the Department of Transportation, which has miserably failed its statutory duty to protect the rights of disabled flyers during the COVID-19 pandemic. Mr. Wall spoke on behalf of AAMM when he wrote that "we are about to file another seven or so lawsuits in the next month." Mr. Wall tells me he himself has no plans to file any new lawsuits related to masks, and the context is clear that his message to DOT was sent in his role as AAMM chairman, informing DOT that if it doesn't start enforcing the law as Congress requires, more AAMM members are ready to sue to protect their rights.

49. The government, like the airlines, tries to make sinister the fact that I am working collectively to sue the TSA regarding its *ultra vires* Health Directives enforcing the FTMM, which have nothing to do with that agency's sole mission of transportation security. The Federal Defendants should know better than to attack a group of disabled Americans' First Amendment rights. Also, TSA is not a party to this case, as courts (including the one in Orlando) have held that the Courts of Appeals have exclusive original jurisdiction to consider challenges to the legality of TSA actions. The six Petitions for Review filed by 14 AAMM members challenging TSA's Health Directives requiring masks, enforcing the CDC FTMM order, are awaiting a briefing schedule or transfer by the D.C. Circuit.

50. My lawsuit does not originate from a single source. I am my own person; I need relief from this Court. The fact I used Mr. Wall's and other AAMM members' pleadings as a template for my own, and that AAMM members help each other write and proofread documents to ensure they are legally accurate and confirm to court rules, style, etc. does not mean that we are all puppets manipulated by Mr. Wall or any other person. Although I hope other AAMM members are successful in their lawsuits, whether they recover damages from the defendants has no direct bearing on my claims. If they were awarded millions of dollars in damages, I would not see any of that money. Likewise, if I win here and obtain a monetary judgment against the Airline Defendants, that money goes to my family, not anyone else.

51. The "coordinated effort at judge-shopping" (*Id.* at 16) is happening by the Airline and Federal Defendants, trying to consolidate every single case nationwide challenging transportation mask mandates into the hands of only one judge in Florida.

52. Mr. Seklecki and Mr. Fairs have not "expressed similar dissatisfaction with proceedings in the Middle District of Florida." *Id.* at 17. They are not, and have never been, plaintiffs in any mask-discrimination case in Florida.

53. There is no "voluminous" administrative record in this case. *Id.* at 22. The government is trying to get the Court to want to ease its workload by punting my case to Orlando, spouting out false claims that it would have to wade through a gigantic administrative record. Not so. The record in this case basically consists of 7-12 biased studies CDC compiled that masks are wonderful and save us all from dying. There is no "burdensome administrative record." Id. at 23. CDC did not consider a single study out of the many hundreds showing masks are totally ineffective at reducing coronavirus spread but harm our health in at least 68 ways. https://bit.ly/masksarebad. (And yes, Mr. Wall and AAMM members compiled this webpage. Surely the Court does not expect me to redo what took others months to put together to achieve the same result.) If anything, the "voluminous" evidence here shows the government and airlines mandated masks with no scientific basis and in total disregard for the health harms caused by forced breathing obstruction.

54. The Middle District of Florida has not "invested substantial time" in the *Wall* cases (*Id.* at 23), as evidenced by the fact they were filed almost nine months ago and have not been resolved, despite substantial briefing last year on summary judgment by Mr. Wall and the Federal Defendants in *Wall v. CDC*, consisting of 150+ pages that led to no decision by the court, and now a second round is underway. In *Wall v. Southwest Airlines*, the Amended Complaint was filed Sept. 13, 2021, and still has not been permitted to proceed with the district judge sitting on a dozen motions, Report & Recommendations, objections, and appeal. It's the fact that the Florida court has not invested any time in *Wall v. Southwest*

*Airlines* that forced me to withdraw from the putative national class-action lawsuit and assert my own claims in this case.

## II. ARGUMENT

**A. The government tried, and failed, to have a similar case transferred within the same judicial district. Judge Byron in Orlando refused the transfer because, *inter alia*, the cases are not related enough.**

The defendants face a huge obstacle, especially the Federal Defendants: They already tried to get a later-filed action attacking the FTMM transferred to Judge Byron in Orlando. He refused to accept the transfer and the district judge assigned the later-filed action, *Health Freedom Defense Fund v. Biden*, No. No. 8:21-cv-1693 (M.D. Fla), denied the government's motion to transfer the case *within the same judicial district*. If intra-district transfer is not warranted, surely an inter-district transfer – from one state to another – is inappropriate. Notably the Federal Defendants make no mention of this failure in their motion, perhaps thinking I'm too dumb to be aware of their failed efforts in Tampa to have that case shipped to Orlando to be consolidated with *Wall v. CDC*.

"After a thorough review, this Court denies the motion. The actions are not sufficiently similar – either in kind or procedural posture – as to create 'the probability of inefficiency or inconsistency.' ... The convenience of the parties and Plaintiffs' choice of forum likewise point in favor of retaining the action in this Division." *HFDF* (Nov. 19, 2021). The government made the same arguments in moving to transfer that case to Orlando as they do here, but the judge in Tampa did not buy anything they were selling, even though *HFDF* raises nearly the same arguments and causes of action as *Wall* and the two individual plaintiffs in that case, like Mr. Wall, suffer from anxiety that makes it damaging to their health to obstruct their breathing by donning a mask.

"Pope, Daza, and HFDF are not the only ones (or the first) to challenge the mask mandate or Executive Order 13998. On June 7, 2021, Lucas Wall filed a *pro se* complaint in the Orlando Division of the Middle District. ... Like the Complaint here, Wall's complaint asserts that the mask mandate violates the APA, exceeds the CDC's statutory authority, or is the product of an unconstitutional delegation of legislative power. Wall also argues that Executive Order 13998 is invalid because it violates the separation of powers." *Id.*

Despite these similarities, Judge Mizelle concluded that "Defendants have not convinced this Court that there is a reasonable probability of inconsistency or inefficiency from retaining this action or that transfer would minimize those risks. Accordingly, the Defendants' ... motion to transfer is DENIED." *Id.*

**B. The statute does not permit transferring this case to the Middle District of Florida. That district doesn't have jurisdiction over this case.**

All defendants base on their transfer requests on but one statute: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action *to any other district or division where it might have been brought* or to any district or division to which all parties have consented." 28 USC § 1404(a) (emphasis added). Obviously I do not consent to transfer, so that wipes out any argument under the second clause of this law.

In terms of the first, the defendants' arguments are totally meritless. I haven't set foot in the state of Florida in many years. The defendants cite not a single airline ticket I bought or attempted to buy during the COVID-19 pandemic for any flight in our out of Florida. Since none of the events given rise to my claim occurred in Florida, the statute bars transfer to the Middle District (or any other district) of Florida.

As noted in my Complaint, venue is proper in this judicial district because a substantial part of the events giving rise to this lawsuit occurred at Richmond airport and on flights to/from Richmond. "A civil action may be brought in ... a judicial district in which *a substantial part of the events or omissions giving rise to the claim occurred* ..." 28 U.S.C. § 1391(b)(2) (emphasis

24

added). Also "A civil action in which a defendant is ... an agency of the United States ... may, except as otherwise provided by law, be brought in any judicial district in which ... *a substantial part of the events or omissions giving rise to the claim occurred* ..." 28 U.S.C. § 1391(e)(1) (emphasis added).

Because a substantial part of the events or omissions giving rise to my claims occurred in the Eastern District of Virginia, this is the appropriate venue. I could not have filed this case in the Middle District of Florida. The only reason I attempted to do so was because I learned, through AAMM, of a proposed nationwide class-action lawsuit being filed there (*Wall v. Southwest Airlines*). Jurisdiction and venue requirements are different from a national class action than an individual lawsuit. Had the Florida court permitted that case to move forward toward class certification, I could have asserted my claims as a named defendant since I would have been part of a nationwide class. But that did not happen, so I withdrew from that case and filed my own. This case could not be filed in Florida as my individual claims did not occur there.

Furthermore, the plaintiff has choice over venue, not the defendants. "[T]he greater the plaintiff's connection to the forum that he or she has chosen, the more deference the plaintiff's chosen venue will receive." *Brown v. Ramsay*, No. 18-cv-10279, 2019 U.S. Dist. LEXIS 228698 at *3 (S.D. Fla. Aug. 26, 2019). Given this deference, a defendant "bears the burden of persuading a court that transfer is appropriate..." *Id.* at *4. Here defendants have not come close to showing that even if this case could have been filed in the Middle District of Florida, that it has met its burden of persuading the Court that transfer is warranted. There is certainly no reason to believe that the defendants are more burdened by litigating in Richmond than they would be in Orlando.

"Courts ordinarily accord deference to a plaintiff's choice of forum in deciding whether to grant a defendant's motion to transfer. *See Osgood v. Discount Auto Parts*, 981 F. Supp. 2d 1259,

1266 (S.D. Fla. 2013) … *Robinson v. Giarmarco & Bill*, 74 F.3d 253, 260 (11th Cir. 1996) ('The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" *HFDF*.

## C. A judge-made "first to file" rule can't override clear and unambiguous statutes enacted by Congress. And no efficiency would accrue from a transfer anyway.

Transfer is barred by statute. Therefore, the Court need not delve into any of the judge-created "first to file" arguments the defendants offer in a failed attempted to overcome the statutory bar. None of the case law quoted by the defendants cites any authority to disregard the clear terms of 28 U.S.C. § 1391(b)(2) and 28 USC § 1404(a).

Even if, *arguendo*, the Court could ignore the statutes, given the differences between all the AAMM members' cases, efficiency will not accrue from a transfer. *Cf. In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (explaining that, under § 1404(a), the movant has the burden of establishing that the suggested forum is more convenient).

There is no reason to grant transfer based on the convenience of witnesses. My claims against CDC and HHS will almost certainly be resolved on summary judgment as is typical in Administrative Procedure Act cases. There is an administrative record and my exhibits rebutting the findings and glaring omissions of that record. There are unlikely to be any witnesses called. If there were, CDC and HHS officials are based primary in the District of Columbia and Georgia, not in Florida. Richmond is far more convenient for any D.C.-based officials than Orlando since Richmond is less than a two-hour drive from the nation's capital.

Should this case go to trial against the Airline Defendants and their employees who participated in the conspiracy to interfere with the civil rights of the disabled, most potential witnesses (airline executives who crafted the discriminatory mask policies) are based at corporate headquarters in

other states. No Airline Defendant is headquartered in Florida. Most witnesses to the discrimina-

tion I've encountered at airports are found in Virginia, New Jersey, and California. None in Flor-

ida. As far as witnesses regarding the discrimination I've suffered aboard planes, flight crew are

based throughout the nation. So there is no theory under which this case could be transferred based

on the convenience of witnesses.

Likewise there is no justification regarding the convenience of parties. To start, I live in Vir-

ginia, since 2015, so it would be a massive burden for me to have to travel to Orlando for any in-

person hearings and/or trial. CDC is based in Georgia, HHS in D.C., American and Southwest are

both headquartered in Texas, JetBlue in New York, and United in Illinois. (Defendant STAT-MD

is based in Pennsylvania.) Not a single party to this case is based in the Middle District of Florida,

and none of the events giving rise to my claims happened there either. No defendant can argue that

Orlando is a more convenient forum for them than Richmond. Notably lead counsel for both the

Airline Defendants and Federal Defendants are based in D.C. and the airlines have already hired

local counsel in Virginia. And any argument that because work performed for State of Florida

barred attorneys as a State of Florida licensed Private Investigator working in Virginia, one of

seven (7) reciprocal states for my Florida licensing, equates to some absurd correlation that I live

in Tampa is ridiculous and factually incorrect and unsupported.

"To be sure, Defendants' counsel must commute to Florida from the Washington, D.C., area

regardless and raise no concern that Tampa creates a higher burden on them compared to Orlando,

Accordingly, this factor weights in favor of denying transfer." *HFDF*.

Finally, there is no conceivable way that transferring my case to Orlando would be "in the

interest of justice." The complete opposite is true. Although I value Mr. Wall's work as an advocate

for the disabled and the founder and chairman of Americans Against Mask Mandates, I frankly do

not want anything more to do with his litigation in Orlando. A transfer, and then the defendants'

next effort to consolidate the cases, would be extremely prejudicial to me. *See* discussion below.

**D. Although my claims are similar to Mr. Wall's and the other plaintiffs' in Orlando, they are not the same.**

Mr. Wall and I suffer from different disorders make it medically intolerable for us to block our

breathing. We both challenge the legality and constitutionality of the FTMM, and we both charge

different airlines with numerous violations of anti-discrimination and other laws. That's about

where the similarities in these cases end. Mr. Wall has not boarded an airplane since the FTMM

took effect Feb. 1, 2021. Whereas I have flown a few times and had to go through the airlines'

illegal mask-exemption procedures. Mr. Wall was denied the ability to pass through a TSA security

checkpoint and board a flight because he medically can't wear a mask. I've have had no choice

but to take flights and suffer due to the FTMM because of work and family responsibilities.

One significant difference in these cases is Mr. Wall's reliance on vaccination status as a ma-

terial consideration in determining who should be required to wear a mask on a public conveyance.

He argues the FTMM is arbitrary and capricious because, among other reasons, it does not take

vaccination status into account. Mr. Wall states in his court papers he is fully vaccinated and

boosted. I do not disclose my vaccination status. I have raised no such argument that whether

someone is vaccinated has any bearing on whether they should be forced to don a face covering to

board a plane or other transportation conveyance.

It's false to claim that these cases completely overlap. In reality, the cases share no common

nexus of operative fact, other than that we challenge transportation mask mandates. Indeed, these

major differences were cited in the Tampa judge's refusal to grant transfer of *HFDF* to Orlando.

"The two actions are also factually distinct. ... Wall filed his complaint *after* he was denied entry and boarding at an airport because he [medically is unable to] wear a mask. ... Plaintiffs in this action ... do not ground their objections to the agency action in their vaccination status. ... While the actions may challenge the same agency action, these key factual differences may lead to differing discovery, legal argument and analysis, and may require resolution on different grounds." *HFDF* (emphasis original).

Notably my single case involves both government agencies and airlines (plus STAT-MD), whereas Mr. Wall decided to split his litigation into two different lawsuits, one against the government and another against the airlines. Mr. Wall is also suing two Florida state agencies, the Central Florida Regional Transportation Authority and the Greater Orlando Aviation Authority, in *Wall v. CDC*. His class-action lawsuit with 12 (now 11) other named plaintiffs includes several airlines not a part of this litigation and my case names American Airlines and United Airlines as defendants, which are not a party to any *Wall* case.

I withdrew from the case in Orlando since it hasn't been certified as a nationwide class action. I'm not engaged in "multiplicitous litigation." I'm involved in one case against TSA and this case against CDC, HHS, four airlines, and STAT-MD (plus numerous yet-to-be-named employees of the four airlines who participated in or neglected to prevent interference with the civil rights guaranteed to me). The Court should chastise the airlines and the government for their "blatant forum-shopping."

Although all 600 AAMM members are united in opposing the FTMM and airlines' discriminatory mask requirements, we are not, as the government claims, filing for the same group of plaintiffs with differently named representatives. We are all pressing our own claims, especially since the attempt at a class-action lawsuit in Orlando has been stalled for five months as a result

of Judge Byron's failure to rule one way or another on the status of the Amended Complaint. Importantly the airlines argue vociferously in *Wall v. Southwest Airlines* that NO plaintiff should be allowed other than Mr. Wall and that multiple plaintiffs should NOT be consolidated into the same case. Yet here they present the Court with the exact opposite arguments. This in and of itself shows the bad faith of the Airline Defendants in trying to kick this can down the road to Florida for a lengthy siesta.

A transfer must be denied when the specific facts giving rise to plaintiff's case are not duplicative of the facts giving rise to the other cases despite allegations that the plaintiffs in the two actions were both victims of the same scheme. *Mariana v. Nocco*, No. 8:20-cv-2998, 2021 WL 3172920 at *1-2 (M.D. Fla. July 27, 2021) (denying motion to transfer). *See also Parkervision v. Qualcomm*, No. 6:14-cv-687, 2015 WL 12852308 at *2 (M.D. Fla. March 9, 2015), where Judge Byron himself denied a transfer after finding the cases "distinguishable" because of "the inclusion of several additional defendants." For the same reasons, the defendants' suggestion that I have to wait (perhaps years at the turtle's pace the *Wall* cases are proceeding in Orlando) for the court where the case was first filed to resolve the issues, and the other court to defer by either staying, transferring, or dismissing the action, is absurd and offensive. I need relief NOW, not months or years down the road. I have already been battling with these agencies and airlines for more than a year. DOT already ruled that JetBlue and Southwest broke the law. Most of the cases the defendants cite involve both sides' consent to a transfer or the exact same parties litigating in different districts. None of this case-law is relevant here. The parties and issues do not substantially overlap.

Here the perpetrators of the discriminatory mask scheme are similar but not the same as in the *Wall* cases. And the facts regarding what I have endured versus what Mr. Wall and the other 11

plaintiffs in Orlando have suffered are different. The facts of the various defendants' acts of discrimination toward us are related but not substantially the same, strongly cautioning against transfer (even if the statute permitted it).

The defendants wrongly claim there can be no reasonable dispute that "substantial overlap" exists between the parties in *Wall* and the parties here. But the truth is I have virtually no similarity to Mr. Wall or the other 11 plaintiffs in Orlando other than us all being unable to medically tolerate having our breathing impeded. Here equitable concerns weigh strongly *against* applying any "first to file" rule that appears nowhere in the statute or the Federal Rules of Civil Procedure. The Airline Defendants do business in numerous states and must comply with not only federal laws but those of the states as well. As with any business that operates nationwide (not to mention also in foreign nations), it of course will always face a risk of facing inconsistent court-ordered obligations.

"Like the Complaint here, Wall's complaint asserts that the mask mandate violates the APA, exceeds the CDC's statutory authority, or is the product of an unconstitutional delegation of legislative power. ... In turn, the dissimilar factual background may produce dissimilar legal arguments. For example, Wall and the Plaintiffs in this action may face different standing and injury-in-fact challenges. So too, Wall's attention to vaccines may take that action down a different path than this one." *HFDF*.

Therefore, while some of the issues raised in this case and the two *Wall* lawsuits are facially similar, the lawsuits are not the same. They are clearly distinguishable.

> "Defendants assert that this action raises the same legal challenges against the same agency action as *Wall*. Thus, absent transfer, Defendants contend there is a probability of inefficient expenditure of judicial resources or inconsistent judgments. Plaintiffs disagree and cite numerous differences both in substance and procedural posture between the two actions. Plaintiffs also contend that their choice of forum and convenience weigh against a transfer. This Court agrees that the two actions are not as similar as they might first appear, and that transfer is not warranted." *HFDF* (internal citations omitted).

31

Also, my case, *Wall v. CDC*, and *Wall v. Southwest Airlines* are all at different procedural stages of litigation, which makes transfer unfavorable. *HFDF*. I just filed my Complaint a few weeks ago. No defendant has yet answered. In *Wall v. CDC*, that case has already been through one round of extensive summary-judgment briefing, Mr. Wall filed an Amended Complaint, and he has moved for summary judgment a second time. In *Wall v. Southwest Airlines*, Mr. Wall and the 12 (now 11) other plaintiffs filed an Amended Complaint on Sept. 14, 2021, which Judge Byron still hasn't allowed to move forward. Furthermore, my claims against the airlines and the government are presented in unison, whereas Mr. Wall's are separated (and one case involves 11 additional plaintiffs). Transfer and consolidation of my case with those would be extremely un-wieldy given the differing procedural postures.

Lastly on this point, the government makes much ado about Mr. Wall filing Notices of Related Action in his Orlando cases, stating my case and those recently filed by Mr. Seklecki and Mr. Faris are similar. As noted above, Mr. Wall is following the vaguely defined rules of the Middle District of Florida in informing the court of any cases that are similar. But again, "similar" does mean "the same" and the filing of notices by another person in totally different lawsuits in another state has no bearing on my assertions that my claims are not anywhere near being the same as Mr. Wall's or anyone else's to justify transfer. Notably I have not identified any related cases, as the Local Rules of this district do not require me to do so. So I could not have identified "this suit as a 'related case' [that] further belies any claim that the suits are so dissimilar that judicial economy would not be best served by transfer." And it certainly doesn't overcome the statutory bar to transfer since this case could not have been filed in Florida.

**E. Transferring my case to Orlando, with the potential for consolidation with the two *Wall* cases, would be extremely prejudicial.**

As the defendants note, the court in Orlando has treated Mr. Wall and his 12 (now 11) *pro se* co-plaintiffs with unbelievable hostility.[3] The plaintiffs in Orlando seem to be at war with the court and vice versa. I do not want to be associated with any of that, which is why I withdrew from the putative nationwide class action Furthermore, the court in Orlando refuses to rule on any motion submitted by the class-action *pro* se plaintiffs in *Wall v. Southwest Airlines*. A glance at the docket shows at least a dozen unresolved motions, objections, appeal, Report & Recommendations, and so forth dating back numerous months. Notably the court's inaction led to Plaintiff Peter Menage losing his job because Judge Byron refuses to rule on his preliminary injunction against Alaska Airlines and Mr. Wall has been stranded out of state for nine months as a result of the judge's refusal to rule on summary judgment last year even though the Federal Defendants and Mr. Wall submitted more than 150 pages of extensive briefing that took me hours to read. The judge in Orlando also won't rule on Mr. Wall's PI motion despite the fact his brother is in crisis in Germany and Mr. Wall can't fly there to be with him because of the FTMM and airlines' discriminatory mask policies. The Court has acted in the *Wall* cases not as an impartial arbiter of the law, but as an adversary against the *pro se* plaintiffs, doing more work than defense counsel themselves to blockade any relief.

---

[3] Mr. Wall being sanctioned for asking Judge Byron to rule on his Motion for Preliminary Injunction by a date certain so he could take a booked flight to visit his brother, experiencing a mental-health crisis in Germany due to the dissolution of his marriage; Judge Byron dismissing Mr. Wall's original Complaint despite more than 150 pages of summary-judgment briefing by both sides; Judge Byron granting the Federal Defendants 30 days to respond to Mr. Wall's first PI motion instead of the seven allowed by Local Rule, forcing Mr. Wall to make a desperate appeal to the 11th Circuit because nearly all this flights were booked in the next month; Judge Byron stating Mr. Wall has shown "a pattern of disrespect for the court" when all he's done is ask for time-sensitive rulings related to upcoming flights he's being banned from taking because of the FTMM; Mr. Andreadakis withdrawing as a plaintiff in *Wall v. Southwest Airlines* because of the Orlando court's "failure to do anything"; Mr. Wall objecting to the court's hostility toward him almost from the day the case began; Mr. Wall's concern that both the district judge and magistrate judge have engaged in conduct that violates the canons of judicial ethics; and Mr. Wall's allegations of bias and mistreatment.

Given how I exited *Wall v. Southwest Airlines* by scolding Judge Byron for his mistreatment of disabled *pro se* litigants, there's no way I could ever obtain an impartial adjudication from Judge Byron if this Court sent my case to Orlando – essentially guaranteeing I could never obtain justice. Here, equitable concerns weigh strongly *against* transfer.

Shipping my case to the battlefield in Orlando would NOT serve the interests of justice. In reality, it would create incredible prejudice, especially if the cases were to be consolidated – as the government already admits is its next tactic to defeat my claims. A review of the record shows the court in Orlando has exhibited a startling animosity to *pro se* disabled litigants. Some of the plaintiffs have fought back against this bias and hostility, to the point the defendants accuse the Orlando plaintiffs of "threatening" the judges (in reality, they have done nothing more than ask that their motions be ruled upon in a timely manner, something the Orlando court clearly has no interest in doing). Given the procedural history of the two *Wall* cases the defendants are so anxious to have my lawsuit attached to, it's clear achieving justice for myself would become nearly impossible in Orlando.

> "[J]udicial convenience weights in favor of retaining the action in this Division. As discussed above, this action is not a carbon copy of *Wall*. Instead, there are different parties, claims, and requested relief. More importantly, the cases arise from different factual scenarios that will likely provide different obstacles to relief and require different legal strategies. And transfer with the goal of consolidation ***would prejudice Plaintiffs if ultimately allowed***, as Plaintiffs should not be unfairly tied to litigating their claims with Wall, who proceeds *pro se* and raises quite different allegations. All told, these differences minimize the potential for duplicative labor if the cases remain before the respective jurists." *HFDF* (emphasis added).

A motion to transfer is only allowable under very specific statutory terms. Those terms are not met here. This Court must retain this case. "Given these differences, this Court is not convinced that significant economies of effort will result from a transfer." *HFDF*.

Based on numerous rulings from the Middle District of Florida, it's likely that court would not accept the transfer and would order this case sent back to Richmond – which would cause undue delay in my efforts to end forced masking in the transportation sector and to terminate the Airline Defendants' discriminatory conduct. "A transfer only raises the possibility of prejudice from delay. *See* Fed. R. Civ. P. 1 (instructing courts given attention to the 'just, speedy, and inexpensive determination of every action')." *HFDF*.

Slightly different claims, even when the defendants are almost identical, is a sufficient reason to deny transfer. *Daniels v. Gov't Emps. Ins. Co.*, No. 8:19-cv-2612, 2020 WL 6599420 at *2 (M.D. Fla. Jan. 15, 2020) (finding two actions not sufficiently related, despite requesting the same relief against mostly the same defendants, because one case addressed only a subset of the claims asserted in the other). *See also Parkervision* (denying a motion to transfer, despite some "duplication of effort," because some claims and defendants were not common to both actions). As noted earlier, Judge Byron declined to accept a transfer of *HFDF*, agreeing with Judge Mizelle that dissimilarities counsel against transfer and no "first to file" rule applies. Here the defendants try to argue that this "second-filed case duplicates the effort of the initial complaint," but that is far from true. They have already lost this exact motion once yet try again in desperation.

The Federal Defendants tried to convince the Tampa judge that "efficiency concerns dictate that only one court decide both cases." That argument was totally rejected. "Because the risk of inconsistency or inefficiency is minimal, the convenience of the parties and Plaintiffs' choice of forum point in favor of retaining the action in this Division, and Judge Byron declines to accept transfer, the Court denies Defendants' motion to transfer…" *HFDF*. I should not be made into a ping-pong ball.

**F. I have a constitutional right to associate with similar litigants, but that in no way means our cases should be consolidated.**

As explored in great detail in Section I, all defendants go on about how I'm involved with other AAMM members in litigating similar (but not the same) cases challenging the FTMM and airiness' discriminatory and unlawful mask policies. It should not be lost on the Court that defendants charged with conspiring to interfere with the civil rights of the disabled are doing so again in this very litigation by attacking my constitutional rights to associate and petition the government (the courts) for a redress of grievances.

An astounding amount of the defendants' motions rail against my participation in AAMM. Apparently, the defendants forget about this little thing called the First Amendment. The entire purpose of associating with others similarly situated is to share resources and work together to defeat a common enemy (mask mandates in the transport sector) that is causing us immense pain and suffering. And because we are challenging the same government and airline policies, it shouldn't come as a surprise to anyone that our pleadings and motions are similar – but not the same; each plaintiff's case contains facts that are unique to that person or family. CDC, HHS, and airlines' unlawful behavior is the same across the nation, so why are the defendants' lawyers shocked that lawsuits attacking those policies would be similar?

Furthermore, as federal courts advise *pro se* litigants, it is not illegal or against any federal or local rule of civil procedure for those not wealthy enough to hire attorneys to collaborate – just as it doesn't break any law for the four Airline Defendants in this case to hire the same attorneys and pool their resources to jointly defend against the charges in my Complaint. "While you may receive help from other non-attorneys in drafting your pleadings and other papers, you must personally sign your complaint and all additional papers filed with the Court." *Pro Se* Handbook for Non-

Prisoners: A Simple Guide to Filing an Action Without the Assistance of Counsel United States District Court Western District of Kentucky.

As the defendants note, it's not a secret that AAMM members work together on our lawsuits. But we comply with the law by personally reviewing and signing all papers filed with courts. Nobody in AAMM who is prosecuting a case in federal court has claimed to be an attorney, nor has any coalition member claimed to represent anyone but themselves or taken any action to do so. We are aware of the rules of proceeding *pro se*. Unlike the defendants, we are also aware of our constitutional right to associate.

> "It cannot be seriously doubted that the First Amendment's guarantees of free speech, petition, and assembly give railroad workers the right to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them ... statutory rights which would be vain and futile if the workers could not talk together freely as to the best course to follow." *Brotherhood of Railroad Trainmen v. Virginia ex. rel. Virginia State Bar*, 377 U.S. 1 (1964).

In that case, the issue was the right of railroad workers to assist the prosecution of claims by injured laborers or by the families of workers killed on the job. Here the issue is the right of the disabled to assist each other in the prosecution of claims of unlawful discrimination by the Airline and Federal Defendants as well as interference with our civil rights and constitutional right to travel among the states and abroad.

"Our form of government is built on the premise that every citizen shall have the right to engage in political expression and association. This right was enshrined in the First Amendment of the Bill of Rights." *Sweezy v. New Hampshire*, 354 U.S. 234, 250-251 (1957), *cf. De Jonge v. Oregon*, 299 U.S. 353, 364-366 (1937).

The defendants make unsupported libelous[4] allegations that Mr. Wall is not a lawyer and has

no authorization to draft and file legal complaints on behalf of myself. They charge Mr. Wall with

unauthorized practice of law. But Mr. Wall is not filing any legal complaints on behalf of myself

or anyone else who belongs to AAMM. Mr. Wall is not involved in this litigation other than that

he, as with myself and other AAMM members, share advice and knowledge of the law so I can

learn how to best prosecute my claims.

> "A State could not, by invoking the power to regulate the professional conduct of
> attorneys, infringe in any way the right of individuals and the public to be fairly
> represented in lawsuits authorized by Congress to effectuate a basic public interest.
> Laymen cannot be expected to know how to protect their rights when dealing with
> practiced and carefully counseled adversaries, *cf. Gideon v. Wainwright*, 372 U.S.
> 335 ... and for them to associate together to help one another to preserve and en-
> force rights granted them under federal laws cannot be condemned as a threat to
> legal ethics. The State can no more keep these workers from using their cooperative
> plan to advise one another than it could use more direct means to bar them from
> resorting to the courts to vindicate their legal rights. The right to petition the courts
> cannot be so handicapped." *Brotherhood of Railroad Trainmen.*

As the Supreme Court has held many times going back several decades, there is nothing inap-

propriate about a coalition of similarly situated individuals banding together to challenge unlawful

Executive Branch and private companies' mandates, so long as we bring our own claims and rep-

resent ourselves. The defendants' inclusion of exhibits of letters from Mr. Wall, dockets of his

cases, charts comparing the claims raised in our complaints, etc. is thus baffling as again, Mr. Wall

is not a party to this case. There is nothing nefarious about members of AAMM assisting each

other in learning the law and drafting our arguments in pursuit of justice. The airlines' complaint

that my claims were formulated primarily, if not exclusively, by Mr. Wall has no basis other than

---

[4] The Airline Defendants are accusing Mr. Wall of criminal misconduct with no evidence and contrary to
longstanding Supreme Court rulings on the First Amendment rights of citizens to associate for the purpose
of litigating for civil rights and other common goals. Practicing law without a license in a felony in Florida,
yet the airlines offer no support for their scandalous claims. The Court should direct counsel for the Airline
Defendants to apologize to Mr. Wall for defaming him.

that I used his complaints (and that of Mr. Faris) as my template. Likewise there is no prohibition

on *pro se* litigants receiving unpaid help from other non-attorneys who are well versed in the law.

The Court should not permit the defendants to attempt "the gravest danger of smothering all

discussion … of litigation on behalf of the rights of members of an unpopular minority." *NAACP*

*v. Button*, 371 U.S. 415 (1963), particularly when we are fighting big government and corporations

for our civil rights.

**G. There is no provision mandating transfer of Administrative Procedure Act cases filed in district courts like there is for those whose original jurisdiction is vested in the Courts of Appeals. Indeed, numerous other Biden Administration COVID-19 pandemic measures have been challenged simultaneously in several district courts without any transfer.**

The government contends that all cases challenging CDC's FTMM order should be transferred

to the Middle District of Florida just like the coalition's various petitions for review of the TSA

order have been transferred to the D.C. Circuit. What the government fails to mention is that Con-

gress enacted a specific statue regarding consolidation of APA cases filed against certain agencies

that only applies to cases in which the Courts of Appeal have original jurisdiction. "All courts in

which proceedings are instituted with respect to the same order, other than the court in which the

record is filed pursuant to this subsection, shall transfer those proceedings to the court in which

the record is so filed." 28 USC § 2112(a)(5). Critically this statue only applies to "proceedings

***instituted in the courts of appeals*** to enjoin, set aside, suspend, modify, or otherwise review or

enforce orders of administrative agencies, boards, commissions, and officers." 28 USC § 2112(a)

(emphasis added). This statute does not apply to judicial review of agency actions for which the

district courts have original jurisdiction, as is the case here with CDC and HHS. And it should be

noted that for the Courts of Appeals, "For the convenience of the parties in the interest of justice,

the court in which the record is filed may thereafter transfer all the proceedings with respect to that

order to any other court of appeals." 28 USC § 2112(a)(5). Petitioners in all six cases against TSA's enforcement of the mask mandate have moved to transfer back to their circuit of origin. Those motions are pending before the D.C. Circuit.

Rightly or wrongly, for whatever reason, Congress made transfer mandatory for agency actions reviewable first by the Courts of Appeals. It enacted no such statute for agency actions reviewable first by district courts. The law provides no basis for any of the defendants to demand this Court punt this case down to Florida.

"In sum, a review of the defendants, claims, and relief shows meaningful differences between these actions. These differences decrease the probability of conflicting decisions and limit the efficiency gains from a transfer." *HFDF*.

The Court must note that proceedings against numerous Biden Administration COVID-19 mandates have occurred simultaneously in many district courts.[5] I've found no order transferring any of these cases. Nor did the government or airlines cite a single such case in their detailed briefs. The government, in addition to failing to mention *HFDF* to the Court, also "forgot" to note that there's at least two other later-filed cases challenging the FTMM that haven't been transferred to

---

[5] *See,* e.g., CDC Eviction Moratorium: *Tiger Lily v. HUD*, No. 2:20-cv-2692, 2021 WL 1171887 (W.D. Tenn. March 15, 2021); aff'd (6th Cir. 2021); *Alabama Ass'n of Realtors v. HHS*, No. 20-cv-3377 (D.D.C. May 5, 2021); *Skyworks v. CDC*, No. 5:20-cv-2407 (N.D. Ohio March 10, 2021); *Terkel v. CDC*, No. 6:20-cv-564, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021); *Chambless v. Walensky*, No. 3:20-cv-1455 (W.D. La.); *Florida Ass'n of Realtors v. CDC*, No. 8:21-cv-1196 (M.D. Fla.); *Baylor v. Kennedy Court*, No. 6:21-cv-617 (M.D. Fla.); and *Brown v. Azar*, No. 1:20-cv-3702 (N.D. Ga.).

Federal Contractor Vaccine Mandate: *Kentucky v. Biden*, No. 3:21-cv-55 (E.D. Ky.); and *Georgia v. Biden*, No. 1:21-cv-163 (S.D. Ga.).

Head Start Mask & Vaccine Mandate: *Texas v. Becerra*, No. 5:21-cv-300 (N.D. Tex.); and *Louisiana v. Becerra*, No. 3:21-cv-4370 (W.D. La.).

Orlando: *Mahwikizi v. CDC*, No. 1:21-cv-3467 (N.D. Ill.); and *Van Duyne v. CDC*, No. 4:22-cv-122 (N.D. Tex.).

Likewise, although not governed by the Administrative Procedure Act, the Airline Defendants didn't inform the Court there are at least two later-filed mask-discrimination cases that haven't been transferred to Orlando either: *Montgomery v. Delta Air Lines*, No. 3:21-cv-2715 (N.D. Tex.); and *Reading v. Southwest Airlines*, No. 1:22-cv-265 (E.D.N.Y.). In sum, no defendant cites a single pandemic case supporting transfer.

> "But more fundamentally, this Court rejects the premise of Defendants' argument. Defendants' core contention is that – for the sake of efficiency and uniformity – it is preferable to transfer cases seeking nationwide relief against the federal government to one district judge who alone decides whether an Executive policy stands or falls. This Court disagrees. Assuming district judges legitimately wield the immense power of enjoining government action against all persons everywhere, is it better for a judge to exercise that power without the benefit of other jurists' considered conclusions on that issue? Hardly. Practically, a district judge's power to render the Executive's policies universally inoperable is magnified through transfer and consolidation; it is challenged and sharpened by differing rulings from other district judges. *See Trump v. Hawaii*, 138 S.Ct. 2392, 2425 (2018) (Thomas, J., concurring)." *HFDF*.

Here both the Airline Defendants and the Federal Defendants ask this Court to put all power to decide the legality of transportation mask mandates in the hand of one single district judge in Florida. The law nor the Constitution have ever imagined giving one judge that sort of immense authority.

> "One might contend that robust disagreement by lower courts jurists is a feature, not a bug, of our system. Article III contemplated a pyramid and hierarchical shape of the federal judiciary, which 'encourages multiple judges and multiple circuits to weigh in,' thus 'permit[ting] the airing of competing views that aids' appellate review. *Dep't of Homeland Sec. v. New York*, 140 S.Ct. 599, 600 (2020) (Gorsuch, J., concurring). Transferring and consolidating cases – particularly ones challenging major Executive branch actions – before a smaller pool of district judges hinders this process while swelling the influence those judges wield." *HFDF*.

The government, seeing early in the *Wall v CDC* case a friendly judge in Orlando, tried to move the later-filed *HFDF v. Biden* lawsuit to Judge Byron. But the judge in Tampa wisely nixed that attempt at judge-shopping, as did Judge Byron himself. The Court must do the same here. "[D]iffering assessments of the legality of government acts coupled with reasoned opinions create a healthy legal debate that benefits the federal judiciary. That principle applies here.... [T]hose benefits [of transfer] diminish in actions challenging a unified Executive branch action that will often involve novel, complex legal issues and raise hotly contested political questions." *Id.*

The Airline Defendants likewise have enjoyed enormous success in defeating so far the anti-discrimination lawsuit filed last June in Orlando, so it can't come as a surprise to the Court that they are frantic to have this case sent to the Sunshine State to bake under the heat until it melts into nothing. The airlines outrageously claim I should not be allowed to engage in forum-shopping. But my claims are not the same, nor are the defendants, as the other litigation. It's the airlines who should not be allowed to engage in forum-shopping by getting any discrimination case filed against them nationwide sent to the same federal judge in another state.

## H. American and United can't be dismissed from this lawsuit.

Section III of the Airline Defendants' motion to transfer impermissibly includes a dispositive motion to dismiss American and United as defendants. As a threshold matter, this motion isn't permitted, so I'm not even obligated to respond to it. Section III contains a motion to dismiss for personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). But a dispositive motion may not be made buried within another motion. "A motion under this rule may be joined with any other motion allowed by this rule." Fed.R.Civ.P. 12(g)(1). But a motion to transfer does not fall under Rule 12 – as noted above, the Federal Rules of Civil Procedure do not even allow a motion to transfer – so

therefore a motion to dismiss for any of the seven reasons enumerated under Fed.R.Civ.P. 12(b) can't be joined with a motion to transfer.

Furthermore, American and United present allegations that are not stated in my Complaint, specifically that they are not subject to personal jurisdiction in this case given that the allegations in the Complaint relate to flights operated by independently owned regional jet operators. My Complaint contains no mention of these regional affiliates, and American and United have not presented the Court with any evidence to support their claim that the two airlines did not operate and/or market flights on which I was subject to discrimination.

Even if the two airlines' contentions are true that *some* of the flights I suffered discrimination on were operated by carriers labeled "American Eagle" and "United Express," there's no assertion that *none* of the flights I took were operated by American and United themselves (so-called "mainline flights.) In fact a United employee, writing on United Airlines letterhead, signed the mask exemptions I have received regardless of whether mainline United or United Express operated the flights (subject to an illegal requirement that I submit a COVID-19 test result within 72 hours of each flight departure – CDC only requires testing on international flights, the legality of which I challenge in this lawsuit).

Most importantly, American and United themselves set the mask policies for their mainline and affiliate flights, and the two defendants control all mask-exemption procedures. When I apply for a mask exemption on flights booked directly with American and United, that application is sent to sac@aa.com or maskexception@united.com. Regional affiliates do not process any medical waivers.

For example, I booked flights in November 2021 marketed by United Airlines on "GoJet Airlines d/b/a United Express." I was granted mask waivers for the trip on United Express from Richmond, Virginia, to Newark, New Jersey, and return. Those exemptions were issued on United Airlines letterhead and signed by "Tonya Hardin" and "Suzanne Martin," employees of United.[6] All e-mail communications between myself and United Airlines regarding the mask exception were signed by "Tonya Hardin," not any employee of GoJet Airlines.

American and United state that "the defendant must purposefully avail itself the privilege of acting in the forum state or causing a consequence in the forum state." These two defendants don't argue they don't operate flights in Virginia, nor do they offer any evidence that they don't market flights to people like me who reside in Virginia. Both American and United have substantial flight operations in this judicial district, including United's hub at Washington Dulles International Airport and American's focus city at Washington National Airport. Further they contend "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." American and United sell flights to Virginians and operate such flights, both directly and indirectly via regional affiliates who carry the name "American" and "United" and operate using the carriers' codes "AA" and "UA." I applied/would have applied to American and United for mask exemptions for flights in and out of Richmond. These exemptions were all evaluated by personnel who work for American and United, per policies of American and United. I filed DOT complaints about American and United, not any regional partner. American and United are registered foreign corporations in Virginia and maintain registered agents in this state, where I effectuated service of process.

---

[6] "Tonya Hardin" is a fake name. In a declaration submitted in this case, the United employee lists her true name as "Tongae Hardin." It's unknown whether Suzanne Martin is also a fictitious name.

The causes of action against American and United arise because of activities of American and United in Virginia and/or on flights that originated or terminated in Virginia. The statute requires that only a substantial part of the events or omissions given rise to the claims occur in this judicial district, not that all events or omissions do. In any case, this court also has personal jurisdiction over American and United under the diversity statute. 28 USC § 1332. And this Court has supplemental jurisdiction over my state-law claims against the two carriers. 28 USC § 1367.

The Court, for all these reasons, shall not dismiss the charges against American and United for lack of personal jurisdiction. Should American and United wish to raise these meritless claims, they must do so solely in a motion made under Rule 12.

### III. CONCLUSION

The defendants have not demonstrated in any way that transfer of my case to the Middle District of Florida is appropriate. Critically, the government already tried this tactic and was slapped down by a judge in Tampa even for an intra-district transfer, whose threshold is much lower than an inter-district transfer. The defendants should be admonished for wasting my time and that of the Court in filing these frivolous motions to distract the Court from their outrageous illegal behavior against millions of disabled Americans.

WHEREFORE, I request this Court enter an order denying both motions to transfer.


Respectfully submitted this 28th day of February 2022.

Kleanthis N. Andreadakis, plaintiff
5108 Hunters Meadow Pl.
Henrico, VA 23231
Telephone: 804-988-1402
E-Mail: mrradioactive@protonmail.com

## LOCAL CIV.R. 83.1(M) CERTIFICATION

I declare under penalty of perjury that no attorney has prepared or assisted in the preparation of this opposition.

Executed on Feb. 28, 2022.

_____

Kleanthis N. Andreadakis, plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on Feb. 28, I e-mailed this opposition to defense counsel:

Jonathan Lucier
Counsel for the Federal Defendants
Jonathan.Lucier@usdoj.gov

Andrew Freidah
Counsel for the Federal Defendants
Andrew.F.Freidah@usdoj.gov

Stephen Pezzi
Counsel for the Federal Defendants
Stephen.Pezzi@usdoj.gov
Joshua Cox
Counsel for the Airline Defendants
Joshua.Cox@stinson.com

Roy Goldberg
Counsel for the Airline Defendants
Roy.Goldberg@stinson.com

Douglas Grimsley
Counsel for Defendant STAT-MD
dgrimsley@dmclaw.com

_____

Kleanthis N. Andreadakis, plaintiff