## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

**KLEANTHIS N. ANDREADAKIS,**

    Plaintiff,

v.

**CENTERS FOR DISEASE**
**CONTROL & PREVENTION** *et al.*,

Defendants.

:
:
:
:
:
:
:
:
:
:

Case No. 3:22-cv-52-DJN

District Judge David Novak

### PLAINTIFF'S REPLY IN SUPPORT OF [21] MOTION FOR
### PRELIMINARY INJUNCTION AGAINST DEFENDANTS CDC & HHS

COMES NOW plaintiff, *pro se*, and replies to the Federal Defendants' opposition (Doc. 49) to my Motion for Preliminary Injunction Against Defendants CDC & HHS (Doc. 21). The government has offered no reason why a preliminary injunction should not issue against the Federal Transportation Mask Mandate ("FTMM"). The Court should grant my motion.

### I. STATEMENT OF FACTS

The government makes numerous false factual allegations that must be rebutted:

1. "The COVID-19 global pandemic poses one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." Doc. 49 at 1. In reality, the travel industry – including the airlines who are defendants in this case – itself just 1½ weeks ago urged the Biden Administration to abolish the FTMM and the International Traveler Testing Requirement ("ITTR"), both of which I challenge in this lawsuit. "Airplanes are already equipped with advanced air filtration systems, and airports


RECEIVED
MAR 1 7 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

have made large investments in air filtration, sanitation, and layouts. COVID-19 hospital-ization rates have decreased significantly and ***the mask mandate should be lifted*** to reflect the improved public health environment." Ex. 1 (emphasis added).

2. The FTMM is not "temporary." Doc. 49 at 1. It requires masking forever, with no expira-tion date. Even if it were repealed tomorrow, nobody could argue that forcing passengers to wear masks for more than 13 months is a "temporary" public-health measure.

3. I'm not asking the Court "to substitute its judgment for that of the agency." *Id.* at 1. I'm asking for it to enforce established, long-standing law.

4. The fact I completed a flight last month with a mask exemption "without incident" does not moot my motion. *Id.* at 1. I have booked another ticket on United Airlines to fly from Richmond, Virginia, to Redding, California on March 20, 2022, returning March 25, and therefore my need for a preliminary injunction remains. Doc. 55.

5. There are no "obvious dangers of allowing unmitigated spread of a highly transmissible disease through the nation's transportation systems." Doc. 49 at 1. Masks are totally inef-fective at reducing COVID-19 spread but endanger human health. https:// bit.ly/masksare-bad. The airlines acknowledge these facts and have been lobbying since last summer to get rid of the mask mandate (and in recent months, also for abolition of the ITTR). "[M]any of these same policies also came with the ***devastating*** ... consequences of severely limiting and discouraging travel. ... Since the start of the pandemic, the federal government's advi-sories, policies, and public messaging have focused on discouraging or actively restricting domestic and international travel. It is time for high-level officials within the Administra-

tion to publicly encourage travel to and within the U.S. Doing so would send a clear message to U.S. businesses, trading partners, and travelers alike that America is once again open for business." Ex. 1 (emphasis added).

6. There are no "duplicative lawsuits" that I have filed challenging transportation mask mandates. Doc. 49 at 2, 10, *et al*. My case against the Transportation Security Administration ("TSA") filed in the Court of Appeals only attacks that agency's enforcement of CDC's FTMM order. This lawsuit challenges the CDC order itself as well as the mask policies of several airlines and the involvement of their vendor, STAT-MD. No defendants are present in both cases.

7. Although "the federal government has a long history of acting to combat the spread of communicable disease," it has never before in the nation's history ever required that any person cover his/her face for any reason, in any setting. *Id*. at 2.

8. CDC's COVID-19 statistics are totally wrong and should not be used to inflame the Court. The virus has infected way "more than 78 million" Americans. *Id*. at 5. A recent sampling of blood donations led scientists to estimate that more than double the number of Americans who have tested positive for COVID-19 have actually had the virus – close to one-half of the nation's population.

9. COVID has NOT "killed more than 928,000 people in the United States alone..." *Id*. at 5. CDC reports those who have died *with* COVID-19, regardless of what the actual *cause* of death was. About 2.8 million Americans die each year, which is about 233,000 per month. That, in the past two years, 928,000 of those deaths would occur in people *with* COVID-19 is not especially unusual considering an estimated 5.6 million Americans have passed away in the two years since the World Health Organization declared COVID-19 a global

pandemic March 11, 2020, and, as noted above, nearly half of our population has been infected with coronavirus. The Court must not allow the government's fear-mongering by including statistics that overestimated the impact of COVID-19's mortality rate – those who died *with* COVID didn't necessarily die *because of* COVID. And that double the number of Americans have been infected than CDC logs means the death rate is at least half of what the government claims, even if one could believe the erroneous data.

10. The government offers no evidence to support its claim that "Mask wearing in particular 'is one of the most effective strategies for reducing COVID-19 transmission.'" *Id.* at 6. The science indicates otherwise. https://bit.ly/masksarebad. So does the travel industry and the U.S. Chamber of Commerce, the nation's largest business organization. "[W]e encourage the Administration to immediately remove travel requirements that no longer fit with the current environment and to set clear timelines and metrics for when others will be lifted," including the mask mandate. Ex. 1.

11. The Omicron variant of COVID-19 is not "circulating at an alarming rate…" Doc. 49 at 6. Omicron's peak is far in the rear-view mirror. CDC data show cases have actually plummeted in the past month.

12. President Biden's Executive Order 13998 contains no evidence to support its false allegation "that public-health experts 'have concluded that mask-wearing … can mitigate the risk of travelers spreading COVID-19." *Id.* at 6-7. The science shows otherwise. https://bit.ly/masksarebad. The massive surges of coronavirus since the president signed E.O. 13988 also contradict his statement. And the airlines themselves disagree with the president that masks mitigate the spread of COVID-19. Ex. 1.

13. The scientific justifications for the mask order are NOT straightforward. They are dubious. Doc. 49 at 7. Masks do NOT help prevent people who have COVID-19 from spreading the virus to others. Masks do NOT provide personal protection to the wearer (hence why Defendant HHS' Food & Drug Administration ("FDA") prohibits them from being labeled as "personal protective equipment"). There is NO community benefits to wearing masks, as seen by massive surges in COVID-19 infections even in places with the most restrictive mask rules. Increasing numbers of people using masks does NOT increase the "benefit" of masking. https://bit.ly/masksarebad.

14. CDC's mask order contains falsehoods regarding "why mask-wearing is especially important on public transportation and in commercial air travel." Doc. 49 at 8. https://bit.ly/masksarebad. Not even the transportation industry itself agrees with CDC. Ex. 1.

15. Requiring masks has done the OPPOSITE of "aid[ing] in re-opening America's economy." Doc. 49 at 8. Business and travel groups note the "devastating" consequences of the mask mandate and testing requirement, including that "Business travel spending was approximately 50% below 2019 levels; and International travel spending was down a staggering 78% compared to 2019." Ex. 1.

## II. ARGUMENT

### A. Regulations do not give CDC and HHS any authority to require masking.

The government argues "That regulation, now codified at 42 CFR § 70.2, provides the CDC with broad discretion to address the uncontrolled spread of communicable disease." Doc. 49 at 4. But the rule only permits the CDC director to act when she "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession

to any other State or possession..." 42 CFR § 70.2. The CDC director never determined that the measures of any particular state or territory regarding COVID-19 and the transportation sector were "insufficient." Furthermore, this rule permits the CDC director to take actions "including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." *Id.* Human faces are not "animals or articles" and masks are do not fall under "inspection, fumigation, disinfection, sanitation, pest extermination, and destruction" of animals or articles "believed to be sources of infection."

Next, the government admits that 42 CFR § 71.32(b) applies only to "any arriving carrier." Doc. 49 at 4. That means that first, this regulation gives CDC no authority to impose a mask mandate on any mode of transport except those "arriving" into a United States port of entry. There is no authority here for a mask mandate on domestic transportation, and especially not on intrastate transportation. Furthermore, this regulation indeed applies only to "any arriving carrier or article or thing on board the carrier..." 42 CFR § 71.32(b). A human face, the target of the mask mandate, is not a transportation "carrier" such as an airplane or bus, and a human face is likewise not an "article or thing on board the carrier."

The FTMM can't be justified by 42 CFR § 71.31(b) as the government incorrectly asserts. Doc. 49 at 5. This regulation only applies "Upon arrival at a U.S. port..." 42 CFR § 71.31(a), which the government fails to mention. So again, the FTMM, even if legal under other authorities, is certainly not lawful based on this rule that only applies to international transportation arriving from a foreign nation into the United States at a designated port of entry.

Other regulations cited by the government to justify the FTMM do no such thing. CDC and HHS admit these regulations only "authorize CDC to limit interstate travel of *infected persons*..." Doc. 49 at 5. But the FTMM applies to *all* travelers, not those whom CDC has determined are

actually "infected." The government doesn't cite the language of these rules since doing so is fatal to its arguments. "A person who has a communicable disease in the communicable period shall not travel from one State or possession to another without a permit from the health officer of the State, possession, or locality of destination, if such permit is required under the law applicable to the place of destination." 42 CFR § 70.3. This doesn't grant any federal agency any authority; it applies only to permits issued by health officers of states and territories. And it only impacts a person who "has" a disease, not every single traveler.

The fifth regulation the government cites to support the legality of the FTMM is of no help because it applies only if "The individual is *reasonably believed to be infected* with a quarantinable communicable disease…" 42 CFR § 70.6. But the mask mandates applies to every single traveler. Also, this rule permits "apprehension, medical examination, quarantine, isolation, or conditional release," not forced masking while in transit.

Finally, although a regulation does permit the CDC director to "require an individual to undergo a medical examination as part of a Federal order for quarantine, isolation, or conditional release for a quarantinable communicable disease," that rule only kicks in *after* an order is issued pursuant to § 70.6. 42 CFR § 70.12. Plus forced masking is no way relates to the CDC director's authority to order a medical exam of a person reasonably believed to be infected with a quarantinable communicable disease.

**B. The government accuses me of delaying seeking a preliminary injunction. But I did so one week after filing this lawsuit. Whereas CDC and HHS waited 10½ months to issue the FTMM after the World Health Organization declared COVID-19 a global pandemic.**

The government alleges the FTMM is based on sound science, not politics. The facts indicate otherwise. As the Federal Defendants admit, President Biden issued E.O. 13998 *one day after he was inaugurated*. Doc. 49 at 7. "A few weeks later, the CDC issued the transportation mask order"

effective Feb. 1, 2021. *Id.* at 7. This is hardly "baseless speculation" that the FTMM is about politics, not public health. *Id.* at 22. Although a Court may not set aside an agency decision because it might have been "influenced" by political considerations (*Id.* at 22-23), that does not apply here because the FTMM was issued *solely* because of political considerations.

The government goes on to argue that because I waited a week to file for a PI after lodging my Complaint, it somehow shows that an injunction isn't necessary: "A long delay by plaintiff of learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." *Id.* at 13. That the FTMM had been in effect for just shy of a year when I filed my Complaint is irrelevant. The event triggering my need for relief was my February 2022 trip to California and future travel, not the issuance of the mask mandate a year prior.

The Court should note that the "long delay" occurred by the Federal Defendants. They admit WHO declared COVID-19 a global pandemic March 11, 2020, but the FTMM was not issued until late January 2021 – 10½ months later. And what triggered the mask mandate? Not any scientific research or pandemic developments, but the executive order of a president who took office *the day before he signed it.* If the FTMM were truly based in science rather than the politics of a new president who made a national mask mandate one of his top campaign pledges – even though Mr. Biden admitted several times he knew it would be unconstitutional – CDC and HHS had 10½ months to issue a Notice of Proposed Rulemaking, solicit public comment, respond to those comments, and then publish in the Federal Register a Notice of Final Rulemaking. The fact the FTMM was rushed into effect without public notice and comment due to the order of a new president

8

demonstrates how it was not based in science or any health need, but purely on political considerations. That makes it not only arbitrary and capricious but also a violation of the procedural requirements of the Administrative Procedure Act.

The government asserts that a court "must generally be at its most deferential" when it is faced with an agency's "scientific determination" or "predictions, within its area of special expertise." Doc. 49 at 21. But none of the above apply here because CDC and HHS put the FTMM into place because of the president's political determination, not any finding the agencies made regarding scientific data. Studies for decades have shown that masks do nothing to stop the spread of respiratory viruses but cause harm to human health. The administrative record shows that CDC and HHS did not consider a single one of the 227 scientific studies, medical articles, and videos Americans Against Mask Mandates have compiled. https://bit.ly/masksarebad. Nor the hundreds of others that have been published but are not contained in this collection. In fact, new studies come out every month detailing how masks have totally failed to contain COVID-19, as is obvious by the massive surges that have occurred around the world regardless of whether countries/states had strict masking rules in place or not.

CDC has not "amply supported its determination that mask wearing 'is one of the most effective strategies for reducing COVID-19 transmission'" nor has it "reasonably explained" why the FTMM is necessary, aside from fulfilling President Biden's campaign promise. Doc. 49 at 21. The Federal Defendants assert my "claim is largely premised on [my] own contrarian view of the science," (*Id.* at 21) but I did not author any of the 227 documents posted at https:// bit.ly/masksarebad. It's not my view and it's not contrarian. This is the widespread consensus of the global scientific community – and it has been for decades well before COVID-19 emerged in December 2019.

There is certainly no "widespread medical consensus that masks work to slow the spread of COVID-19." Doc. 49 at 22. Seven flawed studies cited by CDC certainly does not demonstrate a "widespread medical consensus," nor do some erroneous decisions issued by district courts that "nearly every public-health institution has recommended maskwearing." *Id.* at 22. And I note this Court's mask policy is no doubt based on CDC's flawed guidance (recently changed, it must be noted, to recommend that Americans in the vast majority of counties do NOT wear masks), not any independent scientific determination by Court personnel. *Id.* at 22.[1]

**C. The fact I took a flight last month does not moot my Motion for Preliminary Injunction.**

The government notes that regarding last month's trip to California on United Airlines, I "completed that flight … without being required to wear a mask." *Id.* at 10. But the Federal Defendants ignore that because of the FTMM, United subjected me to numerous illegal requirements as part of my "conditional" mask exemption including that "you pre-board the aircraft and get comfortably situated before other passengers begin to board. In addition, upon arrival, please do not depart the plane until all other passengers have done so." Ex. 3. Notably an e-mail I received from United made clear that even though I was tentatively approved to travel maskless, I would have to submit a negative COVID-19 test for *each segment* of my trip regardless of whether or not rapid testing is available. Ex. 4.[2] Furthermore, "United reserves the right to refuse to transport you if United determines, in accordance with 14 CFR 382, that you pose a direct threat to the health or safety of

---

[1] I objected to the Court's mask mandate, sought a medical exemption, and was denied despite the clear instructions of my physician that I shall not cover my face. Ex. 2.

[2] The government offers no argument or evidence that any COVID-19 rapid test is approved by the Food & Drug Administration. Notably the tests I used on last month's California trip are clearly marked as being allowed by FDA only under an Emergency Use Authorization. Ex. 5. "This product has not been FDA cleared or approved…" *Id.* This violates my right to refuse administration of any medical product issued an EUA. 21 USC § 360bbb-3(e)(1)(A).

others in connection with your flight or violate United's Contract of Carriage." Ex. 3. "This passenger should not sit in an aisle seat." Ex. 4. "When using the onboard lavatory, this passenger should be accompanied to and from the galley and lavatory with a responsible family member who will limit direct contact to other passengers and crew members and take appropriate precautions to limit exposure to surfaces." *Id.* But I travel alone. Receiving a mask exemption from an airline in no way guarantees that I will actually be able to travel.

While I was able to complete last month's trip maskless, there's no guarantee I will be able to complete this month's trip. I have to submit a mask-exemption application to an airline *every single time I book a ticket*, even if previously granted. This is arbitrary and capricious, never knowing before buying a ticket if an exemption will be granted. My medical condition doesn't change trip by trip, so why would my waiver status? I might not be able to secure a rapid COVID-19 test result, a requirement that doesn't apply to nondisabled passengers in violation of 14 CFR § 382.33(a). I might be deemed by an airline that I "pose a direct threat." The government's arguments address none of this.

CDC and HHS go on to argue that because my motion sought relief by Feb. 13 for a Feb. 14 flight, and the Court denied my request for expedited briefing, that "my motion for a preliminary injunction should now be denied as moot, because the relevant events are now in the past." Doc. 49 at 11. Not true. The distinct "issue of preliminary injunctive relief" did not become moot when I took my flight because I am scheduled to fly again March 20-25 for additional professional development. Doc. 55. And I plan to fly again in future months and will be subjected to the FTMM.

The government further argues that I seek "a preliminary injunction *that mandates action*, as contrasted with the typical form of preliminary injunction that merely preserves the status quo pending trial." Doc. 49 at 10 (emphasis original). Not true. I seek to restore the status quo that

existed prior to the FTMM – that I may travel without wearing a mask or having to go through an unlawful and cumbersome medical-exemption process controlled 100% by private companies.

**D. The FTMM only exempts people with disabilities in theory. Private companies are given absolute discretion to consider mask exemptions with no opportunity to appeal to a neutral federal decisionmaker.**

The government disingenuously argues that "the CDC order explicitly *exempts* any 'person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability'" and that "the challenged CDC order does not even apply to [me], and [I] should be able to obtain an exemption through the process made available by each airline – a matter that is primarily be-tween Plaintiff and the airlines, rather than Plaintiff and the government." Doc. 49 at 12 (emphasis original). This is all nonsense. Although a few of my mask-exemption demands to airlines have been approved, most were refused, prompting my numerous complaints to the Department of Transportation and the Virginia attorney general's office. Doc. 20 at Exs. 4-7 & 11-15 (exhibits attached to and referenced in my Complaint).

I inquired Jan. 29, 2022, with DOT regarding my numerous unresolved complaints against Southwest Airlines, noting DOT already found that Southwest broke the law last year in refusing my mask-exemption demands and the carrier continues to do so, yet the department has taken no action. DOT replied "our response to you will likely take some time." Ex. 6. I wrote back to DOT the same day urging it to expedite complaints against Southwest, since it had already been found in violation of the law: "Here we have an air carrier continuing with its pattern of discrimination and actively flaunting it in their quasi-responses to the consumer and your office." Ex. 7.

I continue filing complaints against United Airlines even though it has conditionally approved my last few medical waivers because it justifies its noncompliance with the Air Carrier Access Act

on the FTMM ordered by the Federal Defendants. "Attached is a copy of the CDC order." Ex. 8.
I let United know the CDC mandate contains false information. Ex. 9.

For all of these reasons and more, the government can't argue that "the entire factual predicate
for Plaintiff's demand for time-sensitive relief – that he wants to fly without a mask, and some
combination of the government and the airlines are preventing him from doing so – appears to be
false." Doc. 49 at 13. The entire factual predicate is true and well-supported by evidence.

The FTMM does not allow "private companies to assist with *implementation* of a regulatory
order." *Id.* at 24 (emphasis original). It delegates the entire medical-exemption decisionmaking
process to private corporations. When airlines such as Southwest refuse to grant me a medical
waiver, I have no recourse to appeal to CDC, HHS, TSA, or any other government agency. The
private company's decision is final, violating my Fifth Amendment right to due process. It's not
"reasonable" for unelected bureaucrats at CDC and HHS to authorize private entities to determine
whether they may disregard my constitutional right to travel, statutes, regulations, etc. *Id.* at 25.

Although CDC is not an air carrier, it can't violate provisions of federal law enacted by Con-
gress (unlike the FTMM, which never was) that protect the disabled from discrimination. *Id.* at 25.
CDC's order purports to exempt those with disabilities who can't wear masks, but leaves the entire
waiver decision to private companies and allows them to violate numerous federal regulations. As
noted by my abundant waiver denials by Southwest and other airlines, plus the fact I have to go
through an arduous and unlawful exemption procedure every time I fly with United, the FTMM
absolutely applies to me.

**E. My travel last month and later this month is for business reasons, not personal. I can't be
compelled to use other modes of transportation that are not feasible. Nor can the government
force me to defer my travel indefinitely.**

The government makes an absurd argument that I ignore

"the fact that there are other methods of travel that do not require compliance with the CDC's mask order – for example, by car. He could also defer his travel to a later date, as he includes no allegations that suggest his current travel plans are especially urgent or time-sensitive. ... Plaintiff's personal travel itinerary, without more, 'does not rise to the level of an exigency that would justify' emergency injunctive relief." Doc. 49 at 14.

There are so many things wrong with this statement. First, the government does not get to control what mode of transport I use to travel from my home in Virginia to any domestically accessible location within the contiguous United States. *United States v. Kroll*, 481 F.2d 884 (8th Cir. 1973); *United States v. Albarado*, 495 F.2d 799 (2nd Cir. 1974); *Mohamed v. Holder*, 2014 WL 243115, at *6 (E.D. Va. Jan. 22, 2014); 49 USC § 40103. Being forced to drive from Richmond to Redding would be a trip of nearly 3,000 miles and take an estimated 42 hours each way, not counting stops to eat and drink, get gas, use the bathroom, and sleep. This would pose an enormous inconvenience both professionally and personally and is not economical by any standard.

I can't defer my travel to a later date because the seminars are offered on specific dates and are required for my career development. As noted earlier, CDC's FTMM order contains no expiration date, and the government doesn't control when citizens may travel or for what purpose. This right is reserved to the people by the Constitution. *United States v. Guest*, 383 U.S. 745, 757 (1966). My travel itinerary is not "personal," it is for work. But even if it were for personal reasons, that still doesn't give the government the authority to curtail my freedom of movement.

**F. That Courts of Appeals and the Supreme Court denied motions to stay TSA's enforcement of the FTMM has no bearing on the questions at bar.**

The government makes much ado about the fact the Fourth Circuit and a few other courts denied emergency motions to stay TSA's enforcement of the FTMM. Doc. 49 at 15-16. Those rulings have no bearing on this case because only TSA's Health Directives and Emergency

14

Amendment are challenged in those lawsuits, not CDC's FTMM order. CDC is not a party to any of the six active cases challenging TSA's orders requiring masks. This makes those cases materially distinguishable from this one.

### G. The travel industry and the nation's largest business organization agree with me that the public interest requires doing away with the FTMM.

The Court must again disregard CDC's false statistics about the number of COVID-19 deaths. Doc. 49 at 17. CDC "cooks the books" in an attempt to justify its *ultra vires* actions mandating masks and virus testing in the transportation sector. Airlines, the travel industry, and the U.S. Chamber of Commerce strongly disagree with the government's contention that "The need to protect the public – including other passengers and crew – plainly outweighs any alleged harm that Plaintiff might suffer in connection with his own [business] travel-related inconveniences." *Id.* at 17; *but see* Ex. 1. There is no scientific basis to conclude, as a Florida court incorrectly did, that "the public interest is actually best served by preventing the further spread of COVID-19 through mask enforcement." Doc. 49 at 17; *but see* https://bit.ly/masksarebad. Likewise there is no evidence to support a judicial finding that "enjoining the mask mandate may imperil thousands of lives." Doc. 49 at 17. This is nothing but unsupported fear-mongering by the Federal Defendants, as evidenced by the fact that the number of states requiring face masks can be counted on one hand and CDC itself recently recommended that Americans in the vast majority of counties do not need to wear masks. The government says one thing in public, then tells this Court the opposite.

### H. Masking is not a sanitation measure or in any way similar to sanitation.

The government's contention that forced masking of human faces is a "conventional sanitation measure," is laughable. Doc. 49 at 18. Never before in the history of our nation has any federal

agency (or Congress) ever mandated the use of face coverings for any reason. This historical prec-edent is enough for the Court to conclude the government's attempt to stretch the statute's meaning is absurd. No person has ever said "I'm going to sanitize my face by putting on a mask."

The government quotes various dictionary definitions of "sanitation," but none support forced masking as falling under that term. Placing a mask over one's nose and mouth in no way makes a person "sanitary," since masking does not promotion hygiene or disease prevention (https://bit.ly/masksarebad). Oxford Dictionary defines sanitation as "Conditions relating to public health, especially the provision of clean drinking water and adequate sewage disposal."[3] Merriam-Web-ster's definition, conveniently excluded by the government, includes "the promotion of hygiene and prevention of disease by maintenance of sanitary conditions (*as by removal of sewage and trash*)."[4] "Sanitary" is defined as "of, relating to, or used in the disposal especially of domestic waterborne waste."[5]

This comports with our everyday understanding that "sanitation" refers to *things*, not human faces, i.e. water, garbage, solid waste, streets, etc. In our most populous city, "The NYC Depart-ment of Sanitation is the world's largest sanitation department. DSNY collects more than 10,500 tons of residential and institutional garbage and 1,760 tons of the recyclables – each day. While efficiently managing solid waste and clearing litter or snow from 6,300 miles of streets, the De-partment is also a leader in environmentalism…"[6] New York City had one of the nation's strictest mask mandates during the pandemic (although, like nearly everywhere in America, it's no longer in effect). Yet never did the city's Department of Sanitation issue or enforce a mask order.

---

[3] https://www.lexico.com/definition/sanitation (visited March 7, 2022)
[4] https://www.merriam-webster.com/dictionary/sanitation (visited March 7, 2022) (emphasis added)
[5] https://www.merriam-webster.com/dictionary/sanitary (visited March 7, 2022)
[6] https://www1.nyc.gov/assets/dsny/site/about (visited March 7, 2022)

The World Health Organization defines sanitation as providing clean water and proper disposal of urine and feces. It aims to provide nations with sanitation information to "help decide how to invest in providing toilets and ensuring safe management of wastewater and excreta."[7] Nowhere does WHO define sanitation as including a mask or any other medical device.

The government's 1940s dictionaries fare no better in defining "sanitation" as including the covering of human faces. The 1946 edition of Funk & Wagnalls defines "sanitary" as "A public water-closet or urinal, especially once equipped with sanitary features." Doc. 49-2 at 4. Notably that dictionary includes a diagram regarding "Providing Sanitation for a Modern House," describing the use of clean water, pipes, toilets, sinks, bathtubs, and discharges to sewers. *Id.* Interestingly a mask is not included in this diagram or description (nor any other medical device). Webster's 1942 dictionary likewise terms "sanitary" as "A water closet, urinal, or the like, fitted with sanitary plumbing" and "sanitary engineering" as "That branch of civil engineering dealing with the water supply, sewage, and waste disposal for cities, and other sanitary problems." Doc. 49-3 at 4. These definitions are reflected in common English language use. We don't say "I'm going to the sanitarian to see why I'm ill" or "I'm going to the sanitation facility to pick up my medicine." We go to the doctor and the pharmacy. We don't visit a sanitation facility to buy a mask or seek healthcare; we only go there if we want to take in some really terrible smells of poop and pee being processed.

Nobody but the government's lawyers believe that "sanitation" includes "wearing gloves or a gown," just like it doesn't include masking. Doc. 49 at 18. And doctors don't wear masks and/or face shields to stop the spread of respiratory viruses. *Id.* at 18. They do so to stop sprays and splashes of bodily fluids from landing on their face or inside their nose, mouth, or ears. Just like

---

[7] https://www.who.int/news-room/fact-sheets/detail/sanitation (visited March 7, 2022).

wearing gloves and gowns don't "sanitize" anything. They stop fluids from the patient from contacting the healthcare worker's skin and clothes. Multiple studies show hospital operating rooms where doctors and nurses do NOT wear masks lead to less transmission of respiratory viruses than those in which faces are covered. https://bit.ly/masksarebad.

A mask is NOT "a physical barrier that 'directly' reduces viral transmission in real time." Doc. 49 at 20. A mask simply redirects respiratory droplets that might contain COVID-19 out the top, bottom, and sides of the wearer's face – or in the case of most masks, directly through the material since our breath droplets are much smaller than most cloth or paper used to make masks.

**I. Good cause did not excuse the lack of notice and comment.**

The government contends that "If the good-cause exception does not apply to temporary public-health measures to protect your transportation during a pandemic … it is hard to imagine when it would." Doc. 49 at 23. But CDC and HHS had 10½ months to put the FTMM through APA-required notice and comment from March 11, 2020, to Feb. 1, 2021. There's no "good cause" to have waited almost a year. And the measures are not "temporary." The FTMM has been in effect 13 months already and has no sunset date.

The Federal Defendants cite *Biden v. Missouri* (142 S.Ct. at 654) to justify the lack of notice and comment. But this is the only time any federal court, to my knowledge (and the government cites no other cases to other contrary), determined "good cause" excused notice and comment relating to a COVID-19 pandemic mandate not enacted into law by Congress. The Supreme Court issued a narrow finding that the specific statutory language regarding healthcare facilities that accept Medicare and Medicaid permitted a vaccination requirement. That decision sheds no light on the challenges I've raised to the FTMM.

Failure to provide notice and comment was not "harmless." Doc. 49 at 23. The travel industry stated just 10 days ago that the mask mandate, testing requirement, and other Executive Branch pandemic mandates resulted in "devastating" consequences including a 50% drop in business travel spending and a 78% drop in foreign travel. Ex. 1. The agency's failure to take public comment certainly affected its decisionmaking.

### J. The government's interpretation of the Food, Drug, & Cosmetic Act is erroneous.

CDC and HHS deceitfully claim that the FTMM "says nothing about requiring the use of a mask that is authorized under an EUA." Doc. 49 at 26. But they fail to note that all masks provided by their partner agency, TSA, and the airlines to passengers are those only approved by FDA for emergency use. If I have "concerns about wearing a mask authorized under an EUA," I can't "select another mask that is not" because my doctor instructed me that wearing a mask is harmful.

The government's argument that the FDCA only requires that Americans be given "information" about refusing administration of an EUA medical device is truly nonsensical. There would be no reason for Congress to require in the statute someone be provided information that they may refuse use of an EUA product if they may not actually refuse use of the product. The law allows the government to provide Americans with its beliefs about what health "consequences" there might be from refusal (e.g. CDC's dubious claim that someone who doesn't wear a mask might be at greater risk of contracting COVID-19), but it clearly does not permit the government to impose consequences such as the denial of the constitutional right to freedom of travel and statutory right to use the public airspace if someone uses their right to refuse use of an EUA medical device.

### K. My request for relief is not overbroad.

Lastly, my request for relief is not overbroad. The government cites only single-justice opinions of the Supreme Court, not any binding caselaw. Doc. 49 at 27. Likewise CDC and HHS ignore Fed.R.Civ.P. 65(d)(2)(C), which provides that an injunction may apply to nonparties "who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

I have proposed three types of injunctions the Court might issue. I ask for the worldwide injunction because it's the only one that would guarantee CDC and HHS could not enforce their unlawful mask mandate. Recently, the plaintiff in another mask case was refused travel for him and his 4-year-old autistic son to a critical medical appointment even though the airline had granted him in writing, at the instruction of a federal judge, a medical waiver. American never entered the medical waiver into its computerized reservation system and agents at Miami airport refused to even look at their own company's exemption letter. As Michael Seklecki so excellently put it:

> "This incident illustrates as clear as [a] bright, sunny day why this Court must enjoin the Federal Transportation Mask Mandate ('FTMM') and the airlines' mask policies worldwide. Even after two court hearings and receiving a letter from the airline's manager of legal affairs, we were still refused transportation simply because my son has a disability that makes it intolerable for him to cover his face. … The mandates must be enjoined worldwide for everyone so there is no confusion … There could not be any more crystal clear evidence for the Court to understand that only a world-wide injunction would put a stop to this illicit behavior. An injunction issued only to my son and me would no doubt result in continued refusals to board as agents at various airport would say 'there's no such thing as an injunction against the mask mandate; I haven't heard anything about that.' But if it's universal, the airlines and the government will have to get the word out to all airline and Transportation Security Administration employees. The news will cover it, and every person working at an airport will know it's for real." Doc. 74, *Seklecki v. CDC*, No. 1:22-cv-10155 (D. Mass).

### III. CONCLUSION

None of the government's arguments save the FTMM from being enjoined.

WHEREFORE, I request this Court grant my Motion for Preliminary Injunction Against Defendants CDC & HHS. Doc. 21.

Respectfully submitted this 7th day of March  2022.

Kleanthis N. Andreadakis, plaintiff
5108 Hunters Meadow Pl.
Henrico, VA 23231
Telephone: 804-988-1402
E-Mail: mrradioactive@protonmail.com


**LOCAL CIV.R. 83.1(M) CERTIFICATION**
I declare under penalty of perjury that no attorney has prepared or assisted in the preparation of this reply brief.

Executed on March 7, 2022.

Kleanthis N. Andreadakis, plaintiff


**CERTIFICATE OF SERVICE**
I hereby certify that on March 7, I deposited this reply brief and the exhibit attached hereto in the U.S. Mail, postage pre-paid, for mailing to the Court. Once the clerk's office enters them on the docket, the Court's CM/ECF system will automatically send a Notice of Electronic Filing to all defense counsel.

Kleanthis N. Andreadakis, plaintiff