IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KLEANTHIS ANDREADAKIS,
    Plaintiff,

v.                                                                               Civil No. 3:22cv52 (DJN)

CENTER FOR DISEASE
CONTROL & PREVENTION *et al.*,
    Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on multiple motions filed by the parties. Defendants American Airlines, Inc., JetBlue Airways Corp., Southwest Airlines Co. and United Airlines, Inc. (collectively, "Airline Defendants") have filed a Motion to Transfer Litigation to the Middle District of Florida. (ECF No. 12.) Similarly, Defendants Centers for Disease Control and Prevention ("CDC") and the Department of Health and Human Services ("HHS") (collectively, "Federal Defendants") filed a Motion to Transfer to the Middle District of Florida. (ECF No. 44.) Defendants seek to transfer this action to the United States District Court for the Middle District of Florida, where similar litigation — that Plaintiff sought to join — is now pending. This matter also comes before the Court on Plaintiff's Time-Sensitive Motion for Preliminary Injunction Against Defendant United Airlines (ECF No. 10) and his Time-Sensitive Motion for Preliminary Injunction Against Defendants CDC & HHS (ECF No. 21). Plaintiff seeks an order from the Court enjoining Defendants from enforcing the orders implemented by the federal government requiring masks for airline travelers. For the reasons stated herein, the Motions will be DENIED.

## I. BACKGROUND

### A. The Challenged Orders

On January 13, 2021, the CDC issued an order, which it then amended in December 2021 (the "Testing Order"), generally requiring air travelers to provide proof of a negative COVID-19 test before departure to the United States. *Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery from COVID-19 for All Airline or Other Aircraft Passengers Arriving into the United States from Any Foreign Country*, 86 Fed. Reg. 69,256, 69,258 (Dec. 7, 2021.)

On February 3, 2021, the CDC issued the Mask Order. CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025, 8026 (Feb. 3, 2021). The Mask Order requires persons to "wear masks over the mouth and nose when traveling on any conveyance . . . into or within the United States" and "at transportation hubs." *Id.* at 8026. The Mask Order exempts "child[ren] under the age of 2" and anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others. *Id.* at 8027. It further exempts "[p]rivate conveyances operated solely for personal, non-commercial use." *Id.* at 8028. It does not apply "[w]hile eating, drinking, or taking medication, for brief periods." *Id.* at 8027. The CDC recently extended the Mask Order to remain in place until May 3, 2022.[1]

On April 18, 2022, United States District Judge Kathryn K. Mizelle of the Middle District of Florida issued an order (the "Vacatur Order") declaring the Mask Order unlawful, vacating it and remanding it to the CDC. *Health Freedom Defense Fund, Inc. v. Biden, et al.,*

---

[1]   Federal Transit Administration, *Federal Mask Requirement for Transit*, https://www.transit.dot.gov/TransitMaskUp (last visited April 18, 2022).

No. 8:21cv1693 (M.D. Fla.), ECF No. 53. The Government has appealed that ruling. No. 8:21cv1693 (M.D. Fla.), ECF No. 55.

### B. Plaintiff's Lawsuit

Plaintiff belongs to a group known as Americans Against Mask Mandates ("AAMM"), which Lucas Wall chairs. AAMM works collectively on lawsuits filed by its members to challenge the Mask Order. On January 28, 2022, Plaintiff, proceeding *pro se*, filed the instant Complaint against the CDC, HHS, American Airlines, JetBlue Airways, Southwest Airlines, United Airlines and STAT-MD. (Compl. (ECF No. 1.).) Plaintiff seeks to "permanently enjoin enforcement of the Federal Transportation Mask Mandate and International Traveler Testing Requirement put into place by orders of the [CDC] — under the purported authority of its parent agency, [DHS]." (Compl. at 1-2.) Plaintiff also seeks to "end the unlawful discrimination against the disabled such as [himself] who can't safely wear a mask" by the four Airline Defendants. (Compl. at 2.) He also sues STAT-MD as the "medical vendor that evaluates mask-exemption demands for airlines including Southwest." (Compl. at 2.) Plaintiff brings 44 counts in his Complaint. These include twelve violations of the Administrative Procedures Act ("APA") related to the creation and implementation of the challenged orders; six constitutional violations based on the restriction of the freedom to travel and the delegation of legislative power; thirteen violations of the Rehabilitation Act and Air Carrier Access Act for various COVID-related flight restrictions placed on air travelers; two counts of civil rights violations; and, various state law claims. Plaintiff brings the tenth case filed by AAMM members in federal courts.

### C.   Lucas Wall's Florida Litigation

On June 7, 2021, Wall, proceeding *pro se*, filed suit in the District Court for the Middle District of Florida against the CDC, HHS, Transportation Security Administration, Department of Homeland Security, President Biden, the Greater Orlando Aviation Authority and the Central Florida Regional Transportation Authority. *Wall v. CDC, et al.*, No. 6:21cv975 (M.D. Fla. June 7, 2021), ECF No. 1. The case was assigned to United States District Judge Paul G. Byron and United States Magistrate Judge Daniel Irick. The suit challenges the Mask Order and Testing Order. Wall moved for an emergency request for injunctive relief, which the court denied on June 15, 2021, citing a lack of irreparable harm. (*Wall v. CDC*, ECF No. 28.)

Following briefing on dispositive motions, the court dismissed Wall's complaint and granted him leave to replead claims against certain defendants while dismissing TSA, DOT, DHS and President Biden. (*Wall v. CDC*, ECF No. 187.) On December 26, 2021, Wall filed an amended complaint, asserting claims against CDS and HHS that mirror the claims, often verbatim, that Plaintiff brings in the instant action. (*Wall v. CDC*, ECF No. 188.) On December 28, 2021, Wall filed another motion for a preliminary injunction. (*Wall v. CDC*, ECF No. 191.) Following briefing on the preliminary injunction motion, Wall filed multiple notices demanding a ruling on his motion. (*Wall v. CDC*, ECF Nos. 203, 215, 218.) On January 18, 2022, Judge Byron sanctioned Wall for "a pattern of disrespect for the court" and "impertinent disregard for the Court's busy docket." (*Wall v. CDC*, ECF No. 211.) On February 16, 2022, Wall filed a motion for summary judgment. (*Wall v. CDC*, ECF No. 230.) Then, on March 25, 2022, the CDC and HHS filed a cross-motion for summary judgment. (*Wall v. CDC*, ECF No. 263.) The motions for summary judgment are now fully briefed and ripe for ruling by the court in the Middle District of Florida.

Additionally, on June 14, 2021, Wall filed another suit in the Middle District of Florida against Alaska Airlines, Allegiant Air, Delta Air Lines, Frontier Airlines, JetBlue Airways, Southwest Airlines and Spirit Airlines in connection with their enforcement of mask requirements. *Wall v. Southwest Airlines, et al.*, No. 6:21cv1008 (M.D. Fla. June 14, 2021), ECF No. 1. Judge Byron also presides over Wall's case against the airlines. On September 13, 2021, Wall filed an amended complaint, attempting to add numerous new plaintiffs, including Plaintiff Andreadakis. (*Wall v. Southwest Airlines*, ECF No. 61.) Wall's amended complaint includes many identical allegations and causes of action that Plaintiff Andreadakis brings against the Airline Defendants here. On October 28, 2021, Magistrate Judge Irick issued a Report and Recommendation, recommending that the court strike the amended complaint, with leave to amend, because Wall improperly attempted to represent a class on a *pro se* basis. (*Wall v. Southwest Airlines*, ECF No. 86.) The purported plaintiffs objected to the Report and Recommendation. On January 14, 2022, Plaintiff Andreadakis filed a notice with the court demanding immediate rulings on the objections and other outstanding motions. (*Wall v. Southwest Airlines*, ECF No. 167.) He stated:

> If the Court does not resolve these pending matters promptly (by the end of this month), I will consider filing for a writ of mandamus with the U.S. Court of Appeals for the 11th Circuit asking it to direct this Court to stop ignoring us. I will also consider filing a separate lawsuit against the defendants since this Court refuses to allow our Amended Complaint to proceed.

(*Wall v. Southwest Airlines*, ECF No. 167, at 2.) Finally, on February 3, 2022, Plaintiff Andreadakis filed a Notice of Voluntary Dismissal. (*Wall v. Southwest Airlines*, ECF No. 183.) Citing the court's "continuing bias against" the plaintiffs, Plaintiff Andreadakis stated that he had "made the decision to withdraw from this putative class action and file my own lawsuit." (*Wall*

*v. Southwest Airlines*, ECF No. 183, at 2.)  This notice came less than a week after he filed the instant lawsuit in this Court.

Many other members of AAMM have also filed their own lawsuits in hopes of avoiding what they perceive as Judge Byron's "continuing bias" against the group.  Members of AAMM "work collectively" on their lawsuits, which share a "common goal."  (Pl.'s Combined Opp'n to Defs.' Mot. to Transfer Case to Middle District of Florida ("Pl.'s Opp.") (ECF No. 53) ¶ 16.)  They develop a litigation strategy during regular group videoconference meetings.  (Pl.'s Opp. ¶ 16.)  The members share and copy each other's legal papers.  (Pl.'s Opp. ¶¶ 20-21, 24.)  Indeed, the group claims to have filed fourteen lawsuits in federal courts across the country challenging the masking and testing rules, with dozens more waiting to file lawsuits.

### D.   Procedural History

On January 28, 2022, Plaintiff filed his Complaint.  (ECF No. 1.)  On February 4, 2022, he filed a Motion for Preliminary Injunction (ECF No. 21) against the Federal Defendants, and, on February 7, 2022, he filed a Motion for Preliminary Injunction (ECF No. 10) against United Airlines.  He filed a motion for expedited briefing on both, which the Court denied.  (ECF Nos. 11, 22, 27.)  In requesting preliminary injunctions, Plaintiff asked the Court to enter an order enjoining Defendants from enforcing the FTMM.  On February 18, 2022, Federal Defendants opposed the motion for a preliminary injunction, claiming that Plaintiff has not satisfied any of the criteria for a preliminary injunction.  (ECF No. 49.)  On February 21, 2022, United Airlines filed its opposition to Defendant's preliminary injunction motion.  (ECF No. 50.)  On March 17, 2022, Plaintiff filed his replies in support of his preliminary injunction motions.  (ECF Nos. 70-71.)

On February 7, 2022, Airline Defendants filed a Motion to Transfer Litigation to the Middle District of Florida. (ECF No. 12.) Similarly, on February 17, 2022, Federal Defendants filed a Motion to Transfer to the Middle District of Florida. (ECF No. 44.) In both transfer motions, Defendants argue that Plaintiff's lawsuit constitutes a substantially similar and in many respects identical lawsuit to Wall's litigation pending in the Middle District of Florida. They argue that Plaintiff filed this action due to AAMM's dissatisfaction with the litigation pending before Judge Byron in Florida. However, under the first-to-file doctrine, Wall's lawsuit should take precedence as the first action filed. Defendants claim that allowing Plaintiff's duplicative lawsuit to proceed would amount to allowing blatant forum-shopping on the part of AAMM. On February 28, 2022, Plaintiff opposed the transfer motions. (ECF No. 53.) Airline Defendants filed a reply on March 4, 2022 (ECF No. 62) and, on March 7, 2022, Federal Defendants filed a reply (ECF No. 63.)

These motions are now ripe for review. The materials before the Court adequately present the facts and legal contentions, such that argument would not aid in the decisional process.

## II. ANALYSIS

Defendants do not identify a particular statute or Rule of Civil Procedure as the vehicle by which they move for transfer. Instead, they seek to invoke the judge-made "first-to-file" doctrine as conferring the authority to transfer the case on the Court.

### A. The First-to-File Rule

"The first-to-file rule provides that when multiple suits are filed in different federal courts upon the same factual issue, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901, 914 (E.D. Va.

2019). The rule promotes judicial economy while avoiding forum shopping and the possibility of inconsistent outcomes. *Samsung Elecs. Co. v. Rambus*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005); *see also Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) ("The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources."). As the Supreme Court has noted, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money. . . ." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). The first-to-file rule seeks to "avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Samsung*, 386 F. Supp. 2d at 724. A court that applies the first-to-file rule "will dismiss, stay, or transfer the lawsuit that was filed later." *James v. LoanCare, LLC*, 2016 WL 10893949, at *1 (E.D. Va. Feb. 22, 2016).

Defendants seek to invoke the first-to-file rule as the sole basis to transfer this case. However, Congress has explicitly provided courts with the authority to transfer a case under certain circumstances, and the Court will analyze Defendants' motions under that statutory authority. Rather than providing standalone authority to transfer a case, the first-to-file doctrine serves as a factor in analyzing a transfer under the authority provided by Congress. *See Byerson*, 467 F. Supp. 2d at 635 (stating that the first-to-file rule is "properly considered as [a] component[] of the interest of justice" factor in the transfer analysis); *Samsung*, 386 F. Supp. 2d at 724 (applying first-to-file rule when analyzing the transfer factors); *Turcotte v. Global Refining Group, Inc.*, 2021 WL 5149707, at *4 (E.D. Va. Nov. 4, 2021) (same). Accordingly, the Court will analyze Defendant's transfer motions under the statutory framework provided by Congress.

### B. 1404 Transfer

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts retain discretion under § 1404(a) "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." *Samsung*, 386 F. Supp. 2d at 715. The parties requesting transfer bear the burden of demonstrating the propriety of transfer. *Byerson*, 467 F. Supp. 2d at 631.

Courts undertake a two-step analysis in analyzing transfers under § 1404, asking: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microteck Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). Only if the court determines that the plaintiff could have brought the case in the transferee forum will it proceed to the second inquiry. *Byerson*, 467 F. Supp. 2d at 631. If the court establishes the propriety of the transferee venue, the court balances several factors in answering the second inquiry:

(1) the plaintiff's choice of venue;

(2) convenience to witnesses;

(3) convenience to the parties; and

(4) the interest of justice.

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "Ultimately, the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Byerson*, 467 F. Supp. 2d at 632.

9

### 1. Venue in the Transferee Forum

Here, Defendants have not met the first prong of the analysis — that Plaintiff could have originally brought this case in the Middle District of Florida. "In order to demonstrate that an action might have been brought in a proposed transferee district, a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Koh*, 250 F. Supp. 2d at 630. Under the venue statute, venue properly lies in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such an action.

28 U.S.C. § 1391(b).

For venue purposes, corporations reside in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). A court may exercise general personal jurisdiction over a corporation in its place of incorporation and principal place of business. *Damiler AG v. Bauman*, 571 U.S. 117, 139 (2014). A court may exercise specific personal jurisdiction when a defendant directs its activities at a forum, and the plaintiff's claims arise out of or relate to those contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Distr. Ct.*, 141 S. Ct. 1017, 1025 (2021). For government defendants, the plaintiff may sue in any district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Here, Defendants have not established that Plaintiff could have brought the action in the Middle District of Florida — the proposed transferee district.  With respect to the residencies of the Airline Defendants, Plaintiff alleges that American Airlines is a Delaware corporation with its headquarters in Texas; JetBlue is a Delaware corporation with headquarters in New York; Southwest is a Texas Corporation with headquarters in Texas; and, United is a Delaware corporation with headquarters in Illinois.  (Compl. at 5.)  Plaintiff alleges that the CDC operates as an agency of HHS with its headquarters in Georgia, while HHS has its headquarters in Washington, D.C.  (Compl. at 5.)  Plaintiff alleges that STAT-MD operates as a non-profit organization backed by the resources of the University of Pittsburgh Medical Center with its headquarters in Pennsylvania.  Plaintiff claims that none of the acts giving rise to his claim occurred in the Middle District of Florida.  He has not attempted to fly in or out of Florida during the relevant timeframe.  Defendants do not dispute any of these allegations.  Thus, with no Defendants residing in the Middle District of Florida, and none of the events giving rise to Plaintiff's claims occurring in Florida, Plaintiff could not have properly filed this action in the Middle District of Florida.

Defendants largely fail to address the propriety of venue in Florida.  The Federal Defendants claim that, assuming that they must satisfy the statutory requirements for transfer, the Court can find venue proper in Florida "once [this case] is properly understood as an action by Mr. Wall and his associates, rather than an independent action by Plaintiff to vindicate his own rights."  (Fed. Defs.' Reply at 7.)  However, for the sake of determining whether Plaintiff could have brought this action in Florida, the Court must view it as an individual action by Plaintiff seeking to vindicate his own rights.  The striking similarities in the suits bear relevance on the first-to-file rule, but not on the propriety of venue and personal jurisdiction.  Accordingly,

Defendants have not met their burden of demonstrating that Plaintiff could have brought this case in the Middle District of Florida, and the Court need not engage in the second step of the § 1404(a) analysis. The Motions to Transfer will be denied.

### C. Plaintiff's Motion for Preliminary Injunction

Plaintiff also seeks a preliminary injunction against United and Federal Defendants immediately prohibiting them from enforcing the mask mandate. Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. The Fourth Circuit has recognized that "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). A court may only grant a preliminary injunction, which affords temporary relief before a party proves anything at trial, "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The party moving for a preliminary injunction must demonstrate all of the following:

1. That it is likely to succeed on the merits of the claim;
2. That it is likely to suffer irreparable harm in the absence of a preliminary injunction;
3. That the balance of equities tips in its favor; and
4. That the injunction is in the public interest.

*Accident, Inj. and Rehab., PC v. Azar*, 943 F.3d 195, 201 (4th Cir. 2019). The moving party must establish all four elements. *Id.*

Here, Plaintiff cannot establish that he will suffer irreparable harm in the absence of a preliminary injunction. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Samson v. Murray*, 415 U.S. 61, 88 (1974).

A plaintiff must make a clear showing of irreparable harm, and "the required irreparable harm must be neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). Indeed, the Supreme Court has rejected a standard that allowed a plaintiff to demonstrate only a possibility of irreparable harm as too lenient, because that standard "is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

As a threshold matter, the current state of the Mask Order likely renders Plaintiff incapable of demonstrating irreparable harm. The vacatur of the Mask Order by the United States District Court for the Middle District of Florida renders Plaintiff incapable of claiming any harm from the ongoing enforcement of the Mask Order. Even if the Vacatur Order is stayed or reversed, the Mask Order currently expires on May 3, 2022, undercutting any claim to ongoing irreparable harm. However, should the Mask Order remain in place beyond May 3, Plaintiff has failed to show the required irreparable harm, as explained below.

Plaintiff rests his motion for a preliminary injunction on two claims of irreparable harm: "being forced to mask while flying or be banned from using the public airspace constitutes irreparable harm." (ECF No. 21 at 26.) However, these harms have yet to materialize. And, they may never materialize. Indeed, the Airline Defendants have submitted evidence that Plaintiff has taken two trips to California by airplane — one in November of 2021 and another in February of 2022. (Decl. of Tongae Hardin ("Hardin Decl.") (ECF No. 33-1) ¶¶ 4-5.) For both, Plaintiff received an exemption from the requirement that passengers wear a facemask.

(Hardin Decl. ¶¶ 4-5.) By flying on an airplane without a mask on multiple occasions, Plaintiff has previously ameliorated the exact harms that he claims that he will suffer in the future absent an injunction. He can only speculate that he will not successfully ameliorate this harm again in the future. Plaintiff has submitted no evidence that he has been denied the ability to fly on a future flight or will be forced to fly on a plane with a mask. Nor has he submitted any evidence to suggest that he has a future flight scheduled for which he will be denied an exemption. Instead, he speculates that he may need to travel again in the future, and that he may be denied an exemption.

Plaintiff has not made a clear showing that he faces actual and imminent irreparable harm in the absence of a preliminary injunction. Because Plaintiff has failed to meet his burden on this required prong, the Court need not address the other factors. *See Winter*, 555 U.S. at 23-24 (reversing preliminary injunction without reaching lower courts' holding that plaintiffs had established likelihood of success on the merits, because the plaintiffs had failed to establish other factors); *Direx Israel*, 952 F.2d at 816 ("The district court should have dismissed the motion for preliminary relief because the plaintiff failed to establish that the denial would result in present irreparable harm."); *Accident, Inj. & Rehab.*, 943 F.3d at 205 (declining to address other three requirements for preliminary injunction after finding that the plaintiff had failed to meet one requirement). Accordingly, Plaintiff's motions for preliminary injunctions will be denied.

D.   **The Effect of the Order Vacating the Mask Order**

Given that the United States District Court for the Middle District of Florida has issued the Vacatur Order vacating the Mask Order, the parties shall brief the effect of the Vacatur Order on the claims raised here by Plaintiff. Accordingly, within fourteen (14) days of the entry hereof, Plaintiff shall file a brief, not to exceed twenty (20) pages, explaining the effect of the

Vacatur Order on his claims, including an identification of which specific claims, by number, that he intends to continue to press and which claims that he intends to abandon as moot. Within fourteen (14) days of the filing of Plaintiff's brief, Defendants shall each file a brief in response, not to exceed twenty (20) pages. Plaintiff may file a single reply brief, not to exceed fifteen (15) pages, within the later of seven (7) days of the last Defendant to file a response, or the expiration of Defendants' time to do so.

## IV. CONCLUSION

For the reasons stated above, the Airline Defendants' Motion to Transfer Litigation to the Middle District of Florida (ECF No. 12), the Federal Defendants' Motion to Transfer to the Middle District of Florida (ECF No. 44), Plaintiff's Time-Sensitive Motion for Preliminary Injunction Against Defendant United Airlines (ECF No. 10) and Plaintiff's Time-Sensitive Motion for Preliminary Injunction Against Defendants CDC & HHS (ECF No. 21) will be DENIED. The Parties shall brief the effect of the Vacatur Order as described herein. Finally, Plaintiff's Motion to Stay Briefing on Airline Defendants' & STAT-MD's Motions to Dismiss Until After Rulings on Pending Motions (ECF No. 82) will be DENIED AS MOOT, because the Court has now ruled on the pending motions.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record and send a copy to Plaintiff at his address of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: April 22, 2022